FINA SUPPLY, INC., Petitioner,

v.

ABILENE NATIONAL BANK, Abilene,
Texas n/k/a MBank Abilene, N.A.,
Respondents.

No. C–5390.

Supreme Court of Texas.

March 18, 1987.

Rehearing Denied April 22, 1987.

Donald E. Godwin, Maxwell, Godwin & Carlton, Dallas, Roy A. Longacre, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, Patrick C. Guillot & David L. Patterson, Maxwell, Godwin & Carlton, Dallas, for petitioner.

W. Mike Baggett, Winstead, McGuire, Sechrest & Minick, Pete Baker, Glandon, Erwin, Scarborough, Baker, Choate & Arnot, Dallas, for respondents.

WALLACE, Justice.

This case concerns an irrevocable documentary letter of credit issued by Abilene National Bank in favor of Fina Supply, Inc. Fina entered into an oil exchange agreement with Brio Petroleum, Inc. Abilene National Bank's letter of credit No. 1342 was issued to assure Fina that it would receive payment for any excess shipments of oil made to Brio as a part of their exchange agreement. When Fina attempted to draw under the letter of credit, its draft was dishonored. Abilene National Bank sought a declaratory judgment that it was not liable to honor Fina's draft because the presentment documents submitted did not strictly comply with the terms of the letter of credit. Fina then sued Abilene National Bank for breach of contract, fraud, and for judicial reformation of the terms of the credit. These actions were consolidated for trial, and upon the jury's verdict the court rendered its judgment that Fina recover $4.5 million actual damages and $6.5 million in exemplary damages on its fraud cause of action. The trial court also entered an order reforming the terms of the letter of credit to cover exchange imbalances between Fina and Brio through April 1982. Abilene National Bank appealed, and the court of appeals reversed and rendered judgment that Fina take nothing. 706 S.W.2d 737. We affirm the judgment of the court of appeals.

Fina Supply and Brio Petroleum are in the business of acquiring oil for their affiliated refineries. Oil purchasing patterns sometimes result in the acquisition by one company of oil which is located nearer to another company's refinery. In October of 1981, Fina and Brio agreed to exchange stocks of oil in order to save transportation costs with the idea of exchanging like amounts of oil. Imbalances in the amounts shipped between Fina and Brio were to be made up by payments from one company to the other.

At the request of Brio Petroleum, Abilene National Bank issued its letter of credit No. 1342 in favor of Fina on September 28, 1981. Fina could receive payments from Abilene National Bank under the credit to cover exchange imbalances which favored Brio upon presentment of its draft accompanied by certain presentment documents. The credit payment under the letter of credit was authorized upon receipt of Fina's draft accompanied by:

1. copy of your commercial invoice covering approximately 124,000 barrels of Giddings type crude oil at a price of $36.25 per barrel delivered through October 1981;

2. copy of pipeline statement or pipeline receipt evidencing delivery of approximately 124,000 barrels of Giddings type crude oil to Brio Petroleum, Inc. via Exxon Pipeline, Raccoon Bend Station;

3. signed statement by an authorized representative of Fina Supply, Inc., certifying that the amount drawn hereunder represents balances due from Brio Petroleum, Inc.

Special Instructions:

Partial drawing prohibited.

Draft may not be presented prior to November 23, 1981.

This original letter of credit covered exchange imbalances during the month of October 1981. Fina and Brio negotiated an extension of the letter of credit to cover imbalances during the months of November and December of 1981. Mr. Scott McEwen, a Fina representative, contacted Kathy Kiser, a vice president of Abilene National Bank in charge of that institution's letter of credit operations, regarding amendment of the letter of credit. The first amendment extended the coverage of the letter of credit to include exchange imbalances in November and December of 1981, and also extended the expiration date to January 31, 1982.

In January, February and March of 1982, Fina and Brio negotiated three more amendments to the letter of credit. Kathy Kiser prepared the second amendment which extended the expiration date of the letter of credit to February 26, 1982, with all other terms and conditions to remain the same. Steve Reese, another Fina representative, contacted Kathy Kiser to discuss the variation between this amendment and the first amendment which made the extended coverage for the months of November and December 1981 explicit. Fina maintains that Kathy Kiser assured Reese that further exchange imbalances between Fina and Brio would be covered by the amendment extending the expiration date of the letter of credit. In January 1982, Reese and Kathy Kiser discussed extending the letter of credit to cover oil deliveries during the month of February 1982. The third amendment extended the expiration date to March 3, 1982, with all other terms and conditions to remain the same. In March 1982, a third Fina representative, Robert Holmes, contacted Kathy Kiser concerning the letter of credit to seek coverage of oil exchange imbalances for the months of March and April. At Kiser's suggestion, a fourth amendment was executed which extended the expiration date to May 31, 1982.

Fina bases its claim for fraudulent misrepresentation on Kiser's statements that the last three amendments extending the expiration date of the letter of credit also had the effect of extending the number of months during which exchange imbalances between Fina and Brio would be covered under the credit. In multiple points of error, Fina contends that the court of appeals erred in holding that Kiser's representations were her own opinions as to the legal effect of the amendments, and as such could not support a judgment for fraud. We agree with the court of appeals' determination that Kiser's representations on this point did not amount to actionable fraud.

In *Westwind Exploration, Inc. v. Homestate Savings Association*, 696 S.W.2d 378 (Tex.1985), we considered the legal effect of amendments to a letter of credit which extended the expiration date of the letter and stated that "all other terms and conditions remain the same." In *Westwind*, the letter of credit covered oil

shipments in August 1982. Two amendments extended the expiration date of the letter. When Westwind, Inc. attempted to present invoices under the credit for shipments in July, August, September and October of 1982, its draft was dishonored for failure to strictly comply with the requirement that the presentment documents include only invoices for August shipments. We held that as a matter of law Westwind's presentment documents did not comply with the terms of the letter. The extension of the expiration date did not have the legal effect of expanding the months of coverage of the letter, rather extending the expiration date only lengthened the period during which the beneficiary could make proper presentment in conformity with the terms of the credit.

■ Kathy Kiser's representations to Fina that the coverage of the letter could be expanded by amending the expiration date were representations concerning the legal effect of the amendments. A representation as to the legal effect of a document is regarded as a statement of opinion rather than of fact and will not ordinarily support an action for fraud. *Safety Casualty Company v. McGee*, 133 Tex. 233, 127 S.W.2d 176 (Tex.Comm'n.App. 1939, opinion adopted); *Lewis v. River Oaks Capital Corp.*, 466 S.W.2d 348, 351 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Bifano v. Econo Builders, Inc.*, 401 S.W.2d 670 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.).

■ There are certain exceptions to the general rule that misrepresentations involving a point of law or the legal effect of a document will not support an action for fraud. These exceptions embody a recognition that in certain circumstances a statement of opinion can rise to the level of fraud. A party having superior knowledge, who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation, can be held responsible for this conduct. Relief may also be granted for misrepresentation as to a point of law or of legal rights where there is a fiduciary or confidential relationship of trust between the parties. Additionally, misrepresentations involving a point of law will be considered misrepresentations of fact if they were intended and understood as such. *Safety Casualty Co. v. McGee*, 127 S.W.2d 176.

■ In the present case, Fina and Abilene National Bank, two equally sophisticated business entities, were dealing at arms' length. There was no confidential or fiduciary relationship between the parties. It cannot be said that Abilene National Bank enjoyed superior knowledge, or access to knowledge, concerning the law of letters of credit. Both Fina and Abilene National Bank have access to legal counsel, in fact Fina had the first amendment to the letter of credit examined by its attorneys to be certain that the amendment provided extended coverage. Fina failed to have the second, third and fourth amendments reviewed to determine whether the extension of the expiration date of the letter of credit also extended the months of coverage for oil exchange imbalances. The president of Fina Supply testified that Fina has had extensive experience with the use of letters of credit as financing mechanisms. No artifice or fraud was employed which prevented Fina from making an examination of the amendments to determine whether they accomplished the desired extension of the coverage under the credit. Likewise, where the parties are in an equal bargaining position with equal access to legal advice, there is no room for application of the doctrine that misrepresentations of points of law will be considered misrepresentations of fact if they were so intended and understood. This is so because in such a situation the parties enjoy the opportunity of making their own investigation and determination of the legal effect of their actions. *See, Bifano v. Econo Builders, Inc.*, 401 S.W.2d 670 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.).

In the present case, Kathy Kiser's statements related solely to the legal effect of amending the expiration date of the letter of credit; they did not concern a present factual state of affairs and were not represented as such. Fina enjoyed the opportunity of verifying Kiser's statement, an op-

portunity which Fina declined. Fina will not now be heard to complain that it is excused from the exercise of ordinary care in its business relations because it chose to accept as a fact that an extension of the expiration date of a letter of credit also extends the coverage of the credit. We hold that Kiser's statements concerned the legal effect of the amendments to letter of credit No. 1342, and as such are mere statements of opinion which will not support an action for fraud.

■ Fina also contends that the court of appeals erred in holding that the doctrine of election of remedies applies to bar Fina's pursuit of a judgment for reformation of the letter of credit. We agree with this contention. An election of remedies does not occur unless a party having two or more inconsistent remedies pursues one of them to the exclusion of the others. *Bocanegra v. Aetna Life Insurance Co.,* 605 S.W.2d 848, 851 (Tex.1980). The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. The doctrine is not favored, and its scope should not be extended. *American Savings & Loan Association of Houston v. Musick,* 531 S.W.2d 581, 588 (Tex.1975). An election of remedies does not occur when a plaintiff mistakenly pursues a remedy which does not exist as a matter of law. *Chesshir v. First State Bank of Wharton, Texas,* 620 S.W.2d 101 (Tex.1981); *Poe v. Continental Oil & Cotton Co.,* 231 S.W. 717 (Tex.Comm'n. App. § B, 1921, holding approved); *Henson v. Grayford Oil Corp.,* 549 S.W.2d 7 (Tex. Civ.App.—Dallas 1977, writ ref'd n.r.e.). Because of our holding that Fina had no cause of action for fraudulent misrepresentation as a matter of law, the doctrine of election of remedies cannot apply to bar Fina's pursuit of an alternative remedy. We therefore disapprove that portion of the court of appeals' opinion which held that Fina was barred by the doctrine of election of remedies from pursuing its reformation remedy. There is, however, another reason why Fina is not entitled to an order reforming the terms of the letter of credit.

■ An instrument will not be reformed unless the evidence establishes mutual mistake or some other ground for reformation. *Davis v. Davis,* 141 Tex. 613, 175 S.W.2d 226, 230 (1943). Fina obtained the trial court order reforming the letter of credit to reflect coverage of oil exchange imbalances through April 1982, on the basis of Fina's unilateral mistake as to the dates of coverage coupled with Abilene National Bank's fraudulent and inequitable conduct or, alternately, on the basis of Fina's and Abilene National Bank's mutual mistake. We have determined that Abilene National Bank's representations did not constitute actionable fraud. Nor can it be said that Abilene National Bank's actions amounted to that sort of inequitable conduct which when coupled with unilateral mistake will support reformation of an instrument. Nothing prevented Fina from examining the amendments to the letter of credit in order to ascertain whether they accomplished Fina's goal of obtaining extended coverage under the credit. Fina's failure to make its own determination, and consequently its mistake, was not due to any fraud or deception on the part of Abilene National Bank, but stemmed instead from Fina's misplaced reliance on Kiser's statements of opinion.

■ Fina is not entitled to reformation of the terms of the credit for the additional reason that reformation of a letter of credit will not lie unless it is based on findings sufficient to support reformation made with regard to each of the parties to the letter of credit transaction. To engage its credit, a bank must be able to predict with certainty the possible range of its liability and must be assured that the scope of this liability will not be altered. A change in the obligations or liabilities of one of the parties to a letter of credit transaction must necessarily affect the obligations and liabilities of the other parties. This need for certainty, and the fact of interdependence, is expressed in TEX. BUS. & COMM. CODE ANN. § 5.106(b) which states that once established, an irrevocable credit can be modified by the issuer only with the consent of the benefi-

**542**

ciary and the account party. The International Chamber of Commerce in its Uniform Customs and Practices for Documentary Credits (1974 revision) states with regard to irrevocable credits: "... such undertakings can neither be amended nor cancelled without the agreement of all parties thereto." A change in the obligations of an issuing bank to a beneficiary by modification or reformation of a letter of credit also involves a change in the obligations of the account party to the same issuing bank. This interdependence is apparent when it is realized that under TEX. BUS. & COM. CODE ANN. § 5.114(c) the account customer is bound to reimburse the issuer for any payment duly made under the terms of the credit. By extending the coverage of the credit, the trial court's order of reformation alters Brio's obligations; for if the credit had not been reformed Abilene National Bank would not have been obligated to pay under the terms of the credit and Brio's obligation to reimburse Abilene National Bank would not have arisen. Absent a finding that Fina, Abilene National Bank, and Brio Petroleum agreed that the letter of credit and its amendments covered exchange imbalances through April 1982, the order of reformation cannot be sustained.

This determination that the order of reformation was improperly entered results in the conclusion that Fina did not strictly comply with the presentment requirements under the letter of credit as it stood before the order of reformation was entered. Fina attempted to present draw documents for exchange imbalances through April 1982. The terms of the letter of credit, as amended, covered exchange imbalances from October 1981 to December 1981. In addition, Fina's draw documents consisted of provisional invoices, rather than commercial invoices, did not evidence delivery of "Giddings" type crude oil and attempted to collect for oil delivered to a delivery point not specifically listed in the letter of credit. Fina failed to strictly comply with the terms and conditions of the letter of credit and was not entitled to receive payment under it.

The court of appeals erred in holding that Fina made an election of remedies. Fina was not entitled to an order of reformation and no fraud was shown on the part of Abilene National Bank. We affirm the judgment of the court of appeals that Fina take nothing.