# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00375-CV

**Gregory Daniels, Appellant**

**v.**

**Katherine J. Walters; Sheldon E. Richie; and Richie & Gueringer, P.C., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. GN 301007, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Gregory Daniels sued appellees Katherine J. Walters, Sheldon E. Richie, and Richie & Gueringer, P.C. for negligent misrepresentation and fraud arising out of a real estate transaction and landlord/tenant dispute. Appellees moved for summary judgment and sought sanctions, alleging Daniels's suit was groundless and brought in bad faith. The trial court granted appellees' motion and ordered that Daniels should take nothing by his suit and pay $2,000 in sanctions. Daniels appeals, complaining of the trial court's granting of summary judgment and the award of sanctions. We will affirm the trial court's order.

### Motion to Dismiss and Motion to Supplement the Record

Appellees have filed a motion to dismiss on the grounds that Daniels's appellate brief does not comply with the rules of appellate procedure. Appellees note that Daniels, who is

representing himself *pro se*, has not provided adequate supporting authority or record references. Tex. R. App. P. 38.1 (appellant's brief should contain concise statement of facts, clear and concise argument, appropriate citation to authority, and record references). *Pro se* litigants generally are held to the same standards that apply to licensed attorneys. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *Chandler v. Chandler*, 991 S.W.2d 367, 378-79 (Tex. App.—El Paso 1999, pet. denied). To allow otherwise would give a *pro se* litigant an unfair advantage over litigants represented by counsel. *Cohn*, 573 S.W.2d at 185; *Chandler*, 991 S.W.2d at 379.

Although Daniels's brief does not contain the required citations to authority, he has attempted to cite to the record by way of exhibits from the trial court's record attached in an appendix, and it is apparent that he has attempted to comply with the briefing rules. Further, he has clearly set out his appellate issues: that the trial court erroneously granted summary judgment and awarded sanctions. Despite any inadequacies of his brief, in the interest of justice, we will consider the merits of his issues as we understand them. *See* Tex. R. App. P. 38.9 (briefing rules to be construed liberally). We overrule appellees' motion to dismiss the appeal.

Appellees have also filed a motion to supplement the record with several documents that were "inadvertently" not attached to appellees' motion for summary judgment filed in this cause. Appellees seek to submit the omitted documents on appeal, arguing that they are not new evidence because they were before the trial court in an earlier suit involving these same parties. Appellees argue that Daniels will not be prejudiced by the supplementation because he had an opportunity to review the documents in the earlier suit and did not object below when appellees' motion for summary judgment referenced documents not attached to the motion.

2

That the omitted documents were submitted in the earlier suit does not mean that they were before the trial judge who heard this cause or that this trial judge had knowledge of them or took them under consideration. Further, the appellate record consists only of evidence submitted to the trial court in the cause at issue, not of evidence submitted in other causes, even if related. *See* Tex. R. App. P. 34.1, 34.5, 34.6. We refuse to hold Daniels responsible for failing to object to the omission of the documents. It is the summary-judgment movant's responsibility to ensure that its evidence is submitted to the trial court at the time of hearing, *see* Tex. R. Civ. P. 166a(c), and it is not the responsibility of the non-movant, in this case a *pro se* non-movant, to police the movant's filings. We overrule appellees' motion to supplement the record and will review this appeal based only on the exhibits actually included in the record.

**Factual and Procedural Background**

The circumstances leading to this lawsuit are not entirely clear from the record before us. In 1997, Daniels's elderly father, who lives in Illinois, deeded a piece of property to Daniels. Daniels chose not to record that deed, instead leaving it recorded in the public records as belonging to his father's trust ("the Trust"). Daniels states that he left the property in his father's trust's name to avoid being hounded by confidence men seeking to take advantage of him. Daniels, signing as "landlord," allowed E.W. Ross to lease the property. A dispute arose between Daniels and Ross, leading to a lawsuit and a nearly $10,000 judgment against Daniels. Daniels did not appeal from the judgment entered in that suit. *See Daniels v. Ross*, No. 03-01-554-CV, 2001 Tex. App. LEXIS 8244 (Austin Dec. 13, 2001, no pet.) (not designated for publication) (Daniels attempted to appeal from post-judgment contempt order, not judgment; appeal dismissed for want of jurisdiction). The Trust,

3

represented by appellees, attempted to take a restricted appeal from the judgment, asserting that the Trust owned the property and should have been a party to the suit. *See Dimitry Wanda Declaration Trust v. Ross*, No. 03-01-00417-CV, 2001 Tex. App. LEXIS 8251 (Austin Dec. 13, 2001, no pet.) (not designated for publication). This Court dismissed the appeal, holding that the Trust lacked standing because the Trust had not established that it had any interest in the property and the lawsuit concerned a lease solely between Daniels and Ross. *Id.*

After at least two post-judgment contempt orders were entered against Daniels, Ross filed a second suit against Daniels, seeking a temporary restraining order ("the second *Ross* suit"). Daniels's father hired appellees to represent the Trust's interests in the dispute, hoping to change the course of the litigation and divert some of the rancor the trial court apparently had developed against Daniels. Appellees' theory in representing the Trust was to assert ownership of the property, settle the dispute with Ross, and protect the property from seizure by Ross in satisfaction of the judgments he held against Daniels. Daniels was represented by his own counsel in the second suit, and he acknowledges that Walters clearly and repeatedly told him that she and appellees were not his attorneys, but instead represented the Trust and its interests alone. The record does not reflect exactly what the outcome of the second *Ross* suit was, but it appears that the Trust settled with Ross for about $15,000, plus payment of the nearly $10,000 judgment outstanding against Daniels.

Daniels then filed this suit, alleging that appellees had committed fraud and negligent misrepresentation during the second *Ross* suit. He alleged that although Walters knew of the unrecorded deed, she told him that the Trust, and not he, was the owner of the property. Daniels stated that Walters's statement confirmed his belief that as long as the Trust was listed as owner in

4

the deed records, it was the legal owner of the property, in spite of his father's having deeded the property to him in 1997. Daniels stated that appellees misrepresented the true legal status of the parties and committed fraud on Daniels's father, "conducted their legal strategy in a manner counterproductive to the desire of [Daniels] for a quick resolution of the matter," and depleted most of the Trust's liquid assets, thus pressuring the Trust into making an "unwarranted settlement just to end the cash outflow." Daniels also alleged that appellees' actions prolonged the second *Ross* suit, causing him economic and emotional harm.

Appellees moved for summary judgment, asserting that they had no duty to Daniels because he was not their client and that he lacked standing to bring claims on behalf of or related to any damages suffered by the Trust. Appellees further asserted that Daniels could not establish that they made a misrepresentation, defending Walters's statement regarding the property's ownership as a trial strategy attempting to separate Daniels's liability to Ross from the property and the Trust.

Daniels responded that appellees should not have agreed to represent the Trust knowing that Daniels owned the property. He asserted that appellees' assertion of control "induced" him to allow appellees to act, rather than resolving the matter himself. Appellees, Daniels urged, should have notified Daniels's father of the Trust's lack of legal ownership, ceased their attempts to intervene in the second *Ross* suit, and terminated their representation of the Trust. Daniels asserted that appellees wrongfully ran up legal bills for the Trust amounting to about $80,000 and caused the Trust to have to settle Ross's claims for $15,000, whereas if the Trust had not intervened, Ross would at best have received about $10,000 from Daniels, payable by abatement of future rent.

5

**Standard of Review**

A motion for summary judgment is properly granted only if the movant establishes that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom*, 26 S.W.3d at 530. Not until the defendant establishes a right to summary judgment does the burden shift to the plaintiff to raise a fact issue. *Centeq Realty*, 899 S.W.2d at 197; *Holmstrom*, 26 S.W.3d at 530. We make every reasonable inference, resolve all doubts, and view the evidence in the light most favorable to the non-movant. *Centeq Realty*, 899 S.W.2d at 197; *Holmstrom*, 26 S.W.3d at 530.

**Discussion**

*Damages to the Trust*

Daniels asserts claims both on his behalf and on behalf of his father's trust. The only damages he clearly identifies are damages suffered by the Trust, although he makes a reference to having suffered "significant economic damages," as well as mental pain and anguish from the prolongation of the second *Ross* suit and subsequent "personal family animosities."

It is evident that Daniels is angry at what he views as the wasting of almost $100,000 from his father's trust through its involvement in the second *Ross* suit. He argues that appellees should have known better than to take the case and should not have attempted to intervene because

6

they knew Daniels, not the Trust, was the true owner of the property. However, the damages of which Daniels complains are largely losses suffered by the Trust, and appellees are correct that Daniels lacks standing to bring claims or seek damages on behalf of his father and the Trust. *See Barcelo v. Elliott*, 923 S.W.2d 575, 577-79 (Tex. 1996); *Chapman's Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Nor does Daniels have standing to complain that appellees' conduct in the second *Ross* suit was counter to his wishes; appellees did not represent Daniels and were not bound to accede to his wishes. *See Chapman's Children's Trust*, 32 S.W.3d at 440-41 (no right of recovery against attorney who files motions, even if meritless, because conduct is part of discharge of attorney's duty to client; other sanction is available, such as under rules of civil procedure and contempt proceedings); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied) ("An attorney may assert any of his client's rights without being personally liable for damages to the opposing party."). Therefore, summary judgment was proper as to Daniels's claims related to the Trust's legal bills, appellees' agreement to represent the Trust, and any alleged fraud committed against Daniels's father or the Trust.

However, the fact that Daniels was not appellees' client does not by itself utterly defeat all of Daniels's causes of action. Daniels argues that Walters's statement that he was not the legal owner of the property led him to stand aside while appellees asserted their position in the *Ross* suit. Daniels had standing to bring claims related to injuries he alleged he himself had suffered. We will examine the record to determine whether appellees showed that they were entitled to judgment as a matter of law as to the claims of fraud and negligent misrepresentation resulting in harm to Daniels, to the extent that such allegations can be gleaned from his pleadings.

7

*Fraud and Negligent Misrepresentation*

Common-law fraud requires a plaintiff to show that: (1) the defendant made a representation that was both material and false; (2) at the time the representation was made, the defendant knew it was false or was reckless as to its truth; (3) the defendant intended that the plaintiff rely on the representation; and (4) the plaintiff justifiably relied on the representation and was injured as a result. *Ernst & Young L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). To establish negligent misrepresentation, a plaintiff must show that: (1) the defendant made a representation in the course of its business or during a transaction in which it had an interest; (2) the representation was false; (3) the defendant did not use reasonable care or competence in making the representation; and (4) the plaintiff was justified in relying on the representation and as a result suffered pecuniary loss. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). A lawyer may be liable for certain negligent misrepresentations made to a non-client, but only if the non-client was justified in relying on the statements. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794-95 (Tex. 1999). Reliance on a statement made in an adversarial context is generally not justified, and courts should examine whether and to what degree the non-client's and client's interests are consistent with each other. *Id*. at 794. A lawyer must invite a non-client to rely on the statement before a negligent misrepresentation action may lie. *Id.* at 795. Generally, a representation on a matter of law cannot be used as a basis for a fraud claim and is considered an opinion; however, such a statement may be considered a statement of fact if the evidence shows it was intended to be and was understood as a statement of fact. *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987); *West Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 533 (Tex. App.—Austin 1994, no writ).

8

Daniels's asserted causes of action require both a misrepresentation and justifiable reliance on that misrepresentation. For fraud, the defendant must have intended that the plaintiff would rely on the statement, *see Fina Supply*, 726 S.W.2d at 540, and for negligent misrepresentation, the defendant must have invited such reliance. *See McCamish, Martin*, 991 S.W.2d at 795.

Although Daniels and his father did not view their interests as opposing, the Trust's pleadings clearly attempted to distance the Trust from Daniels's actions, indicating that the Trust's and Daniels's interests were not completely aligned. Appellees repeatedly told Daniels that they did not represent him, which indicates they were not operating to protect his interests and did not intend for him to rely on their statements. Walters's statement that the Trust was the owner of the property was made as part of her representation of the Trust and as part of appellees' legal strategy, attempting to protect the property from seizure and sale. The evidence indicates that appellees' legal argument regarding ownership was not made as a statement of fact and that they did not intend that Daniels would take it as such or be deceived by it. Daniels has not rebutted appellees' evidence by showing that Walters invited him to rely on her statement as a statement of fact or that appellees intended that he do so. The evidence shows that Daniels could not reasonably have relied on appellees' statement of the law, made as part of their trial strategy, as a statement of fact.

Further, although Daniels states in his response to appellees' motion for summary judgment that he was "induced to sit on the sideline" and "to forfeit his right to pursue a prompt and appropriate resolution of the matter," there is no evidence that Daniels relied on Walters's statement, as opposed to his own counsel's guidance. After appellees showed that there was no justifiable

9

reliance, Daniels did not present evidence to raise a fact issue on either claim. The trial court did not err in granting summary judgment in favor of appellees. We overrule Daniels's first issue on appeal.

**Award of Sanctions**

Daniels next argues that the trial court erred in assessing sanctions against him. Rule 13 of the rules of civil procedure allows a trial court to assess sanctions against a person who files pleadings that are groundless and brought in bad faith or for purposes of harassment. Tex. R. Civ. P. 13. A claim is "groundless" if it has no basis in law or fact and not warranted by a good faith argument from existing law. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989); *Riddick v. Quail Harbor Condo. Ass'n*, 7 S.W.3d 663, 677 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "A suit is brought in 'bad faith' if it is motivated by malicious or discriminatory purpose." *Riddick*, 7 S.W.3d at 677. We will set aside an award of sanctions only on a showing of a clear abuse of discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990). An abuse of discretion occurs if a trial court acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Id.*

In May 2002, almost a year before filing this lawsuit, Daniels sent Walters an email stating he had recently come across a copy of the deed and was "shocked" to be told by his attorney that it meant he was the legal owner of the property. Daniels went on to note that the settlement between the Trust and Ross had not yet been finalized and that Ross "may not be inclined" to settle when he learned that appellees "misrepresented the ownership interest" of the Trust. Daniels "recommend[ed]" that appellees refund all fees paid by the Trust, pay the *Ross* settlement themselves, and apologize to Daniels's father. Daniels said that his damages were "still to be

10

determined," but that he would not pursue "regulatory" action if appellees did as instructed. During this suit, Daniels sent Walters a note that states in full, "Just a reminder....you reap what you sow...."[1]

In Walters's affidavit, she stated that after receiving Daniels's May 2002 email, she wrote to Daniels's attorney to warn Daniels that his alleged claims lacked merit. Walters noted the threatening tone of Daniels's email and requested that Daniels be asked to cease such communications. Walters's letter essentially gives the same explanation appellees advanced in their motion for summary judgment—the claim of ownership was made as a good-faith trial strategy in an attempt to represent the Trust's interests and protect the property from seizure by Ross. Walters's letter further indicates that Daniels, who was represented by his own counsel, knew at the time the statements were made that appellees' assertion of ownership was part of their trial strategy.

Daniels has not shown that the trial court abused its discretion in assessing sanctions. Daniels knew from the beginning of appellees' involvement in the *Ross* suit that they represented the Trust, not Daniels. Appellees never invited Daniels to rely on Walters's statement, and Daniels was not justified in relying on it to his alleged detriment. Before Daniels filed this suit, Walters attempted to explain the facts to him and warned him that his claims had no merit. Lacking any

---

[1] As part of their summary judgment evidence, appellees attached an excerpt from the first *Ross* suit, in which the trial court stated:

> Mr. Daniels, I have been a Judge for 21 years, and I have encountered hundreds of thousands of people during that period of time, and I can't—I've spent the last two days trying recall anybody in my experience who has been more unreasonable than you, and I've not yet . . . found anybody who has been more unreasonable than you in my experience.

Appellees also noted that, at the time they filed their motion, Daniels had been or was involved in at least eleven other lawsuits within Travis County alone.

evidence of justifiable reliance, Daniels's causes of action could not succeed and were arguably groundless. *See Donwerth*, 775 S.W.2d at 637. Daniels's communications with appellees have an unpleasant tone and can be interpreted as threatening to interfere with the settlement in the second *Ross* suit or to seek sanctions or disciplinary action of some kind, and another trial judge in another proceeding found Daniels to be remarkably unreasonable.[2] Such evidence supports a finding that this suit was brought in bad faith or for purposes of harassment. *See* Tex. R. Civ. P. 13; *Riddick*, 7 S.W.3d at 677. The trial court did not abuse its discretion in ordering Daniels to pay appellees $2,000 for time spent defending against his suit. We overrule Daniels's second issue.

Having overruled Daniels's issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   April 8, 2004

_____

[2] The judge's statement in the previous case is of questionable relevance for purposes of this case, but that evidence was before the trial court, and it arguably provided further context for the trial court's evaluation of the harassing nature of this lawsuit.