**CHEUNG–LOON, LLC, Appellant**

**v.**

**CERGON, INC. d/b/a Primo's Bar and Grille and Edward P. Cervantes, Appellees.**

**No. 05–10–01171–CV.**

Court of Appeals of Texas, Dallas.

May 15, 2012.

Jadd F. Masso, Strassburger & Price, LLP, Dallas, for Appellant.

John D. Sloan Jr., Douglas W. Lukasik, Gardere Wynne Sewell LLP, Dallas, for Appellees.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

This is an appeal from a summary judgment in a suit for breach of a lease agreement. Cheung–Loon, LLC contends the trial court erred in granting summary judgment in favor of Cergon, Inc. d/b/a Primo's Bar and Grille and Edward P. Cervantes and in denying Cheung–Loon's first and second motions for partial summary judgment. Cheung–Loon generally argues the trial court erred in concluding that it was liable for breaching the lease and that appellees rightfully and properly terminated the contract. For the reasons set forth below, we reverse the trial court's judgment in favor of appellees and render judgment that they take nothing by their claims against Cheung–Loon. We also render judgment in favor of Cheung–Loon on appellees' claims for breach of contract,

declaratory judgment, and fraud as well as their affirmative defenses of want of consideration, fraud, waiver and estoppel. Finally, we remand for further proceedings Cheung–Loon's claim for breach of contract and appellees' affirmative defense of failure of consideration.

### I.

Cheung–Loon is the owner of several properties in Dallas, Texas, including a commercial building located at 3317 McKinney Avenue and a parking lot located at 3321 McKinney Avenue. In 2006, Cheung–Loon and Cergon, Inc. d/b/a Primo's Bar and Grille entered into a lease agreement under which Primo's agreed to pay a monthly rental fee for use of the parking lot. Edward P. Cervantes, president of Cergon, Inc., signed the lease on behalf of Primo's and personally guaranteed Primo's performance under the lease. The term of the lease was for five years with a commencement date of June 1, 2006 and an expiration date of May 31, 2011.

The parties also signed a "Non–Disturbance, Attornment and Estoppel Agreement" with Southwest Bank relating to the bank's interests as mortgagee of the property. Among the provisions of the non-disturbance agreement was one that allowed the bank a thirty-day opportunity to cure any default by Cheung–Loon on its obligations under the lease following written notice of the default from Primo's. The lease between Cheung–Loon and Primo's contained a similar provision requiring Primo's to provide Cheung–Loon with written notice of any default and a thirty-day opportunity to cure before pursuing legal remedies.

On July 20, 2007, Cheung–Loon sent Primo's a letter stating that Primo's was required to obtain a certificate of occupancy for the parking lot from the City of Dallas. Cheung–Loon referenced para-

graph 6.03 of the lease that placed the burden of obtaining a certificate of occupancy on Primo's. The letter set forth landscape and lighting requirements for the certificate to be granted and included plans and bids for the requirements to be met. The letter concluded with the statement that the approved plan and work must be completed within 30 days to comply with the City's requirements.

Near the end of 2007, Cheung–Loon began leasing space in its building at 3317 McKinney Avenue to a tenant named Dear Clark. According to Primo's, the employees and patrons of Dear Clark began using the parking spaces in the lot at 3321 McKinney Avenue to such an extent that Primo's customers were excluded from most, if not all, of the lot. Charles Saunders, an employee of Primo's, testified that he notified Cheung–Loon "on a number of occasions throughout the early months of 2008 of the extensive use of Primo's parking lot by Cheung–Loon's other tenants in violation of the Lease Agreement." Saunders further testified that Cheung–Loon took no action in response to his complaints.

On March 4, 2008, Cheung–Loon sent a second letter to Primo's about the certificate of occupancy. The letter stated that Primo's failure to complete the work required to obtain a certificate of occupancy constituted an "event of default" as defined by the lease. The letter further stated that Cheung–Loon intended to pursue its remedies under the lease including entering the premises without terminating the lease and completing the required work on Primo's behalf. Cheung–Loon sent a third letter on April 16 stating that if Primo's did not begin work on the modifications necessary to obtain a certificate of occupancy by May 1, Cheung–Loon would hire contractors to perform the work and bill Primo's for the work when completed.

On May 22, Cheung–Loon received an undated letter from Primo's stating that Primo's was rescinding its lease agreement with Cheung–Loon. The letter stated that Primo's customers were not able to use the parking lot because Cheung–Loon's other tenants were making excessive use of the lot. The letter referenced an agreement that allowed Cheung–Loon's other tenants to use ten of the twenty-three spaces in the lot during business hours in exchange for Primo's use of the parking spaces behind 3317 McKinney Avenue after 6 p.m. Primo's stated this arrangement was not working because the other tenants used more than their ten alotted spaces during the day, extended their business hours and, therefore, use of the lot to 10 p.m., and posted signs in the parking spaces behind their building prohibiting restaurant parking. As of June 1, 2008, Primo's ceased paying rent under the lease.

On June 4, 2008, Cheung–Loon sent Primo's a letter stating that it was rejecting Primo's "unilateral recission" of the lease. Cheung–Loon demanded that Primo's continue making rental payments under the terms of the lease and that it immediately comply with the requirements to obtain a certificate of occupancy. Cheung–Loon noted in the letter that it considered Primo's right to use the parking lot to be "non-exclusive" and that it wanted to work with Primo's and the tenants of 3317 McKinney Avenue to resolve the issue of the lot's use.

On July 16, Cheung–Loon sent Primo's a notice of default based on Primo's failure to obtain a certificate of occupancy and make payments due under the lease. The notice stated that Cheung–Loon was providing Primo's with an opportunity to cure its default. Primo's took no action in response to the notice and, approximately one month later, Cheung–Loon brought this suit for breach of contract. Appellees

answered and asserted the affirmative defenses of want of consideration, failure of consideration, fraud, duress, estoppel, and waiver. Appellees also brought counterclaims for fraud and breach of contract and requested a declaratory judgment that Cheung–Loon violated Primo's right under the lease to exclusive use of the parking lot.

Cheung–Loon filed a motion for partial summary judgment on its claim for breach of contract and a no-evidence summary judgment on appellees' claims and affirmative defenses. Cheung–Loon argued the undisputed facts showed that Primo's unilateral recission of the lease in May 2008 constituted a breach of contract. According to Cheung–Loon, the recission could not be justified by any alleged breach on its part because Primo's did not provide it or the bank with written notice of a failure to perform and a thirty day opportunity to cure as required by the lease and the non-disturbance agreement. The trial court denied the motion.

Cheung–Loon then filed a second motion for partial summary judgment contending that, as a matter of law, it did not breach the lease by allowing the tenants of 3317 McKinney Avenue to use the parking lot because the lease did not grant Primo's an exclusive right to use the lot. Appellees also moved for partial summary judgment seeking dismissal of Cheung–Loon's breach of contract claim and judgment in their favor on their breach of contract and declaratory judgment claims. Appellees argued the lease unambiguously provided for exclusive use of the lot and Cheung–Loon's act of permitting others access to the lot was a breach of the agreement allowing Primo's the right to rescind.

The trial court granted summary judgment in favor of appellees and denied Cheung–Loon's second motion for partial summary judgment. In its judgment, the trial court declared that: (1) Primo's possessed a contractual right to the exclusive use of the 3321 McKinney Avenue parking lot; (2) Cheung–Loon's actions undermined and rendered the lease between the parties useless and valueless; and (3) Primo's rightfully and properly rescinded and terminated the leasing arrangement. The court awarded appellees actual damages in the amount of $33,042.90. Following a non-jury trial on the issue of reasonable and necessary attorneys' fees, the court rendered a final judgment incorporating the earlier summary judgment orders and awarded attorney's fees in the amount of $150,000, contingent appellate attorneys' fees, and pre-judgment and post-judgment interest. Cheung–Loon then brought this appeal.

II.

Cheung–Loon presents two issues in its appeal. In its first issue, it contends the trial court erred in granting appellees' motion for partial summary judgment and in denying Cheung–Loon's first motion for partial summary judgment. Our review of a traditional summary judgment is well settled. We consider all the evidence in the light most favorable to the nonmovant to determine whether the movant has shown that no material fact issue exists and it is entitled to judgment as a matter of law. *See Carbonara v. Tex. Stadium Corp.*, 244 S.W.3d 651, 654 (Tex.App.-Dallas 2008, no pet.). When both parties move for summary judgment, each must carry its own burden of proof. *See Laurel Land Mem'l Park, Inc. v. Dallas Cent. Appraisal Dist.*, 911 S.W.2d 783, 785 (Tex. App.-Dallas 1995, writ denied). A motion for a no-evidence summary judgment may be granted only if the respondent brings forth less than a scintilla of probative evidence to raise a genuine issue of material fact. *See King Ranch, Inc. v. Chapman,*

118 S.W.3d 742, 751 (Tex.2003). Evidence is less than a scintilla when it is so weak that it does no more than create a mere surmise or suspicion of a fact. *Id.* Evidence is more than a scintilla when it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

■ Appellees moved for and were granted summary judgment on their claims for breach of contract and declaratory judgment. Both claims required appellees to show that the lease agreement provided Primo's with the exclusive right to use the parking lot at issue and that Cheung–Loon breached the agreement by allowing other tenants to use the lot. In addition to showing that Cheung–Loon breached the lease, appellees bore the burden of showing that all conditions precedent to their recovery under the contract were satisfied. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998). A condition precedent is an act that must occur before there is a breach of a contractual duty. *Mun. Admin. Servs., Inc. v. City of Beaumont,* 969 S.W.2d 31, 40 (Tex.App.-Texarkana 1998, no pet.).

Cheung–Loon pleaded and argued that appellees could not recover on their claim for breach of contract or declaratory judgment claim because Primo's failed to meet the conditions precedent of giving written notice of the breach and a thirty-day opportunity to cure as required by both the lease and the non-disturbance agreement with Southwest Bank. Appellees do not contest Cheung–Loon's assertion that the written notice and opportunity to cure requirements were conditions precedent to their ability to maintain an action on the lease. Accordingly, appellees bore the burden of showing either that it met the conditions or that performance of the conditions was excused. *See Trevino v. All-*

*state Ins. Co.,* 651 S.W.2d 8, 11 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (Op. on reh'g).

■ Paragraph 11.03 of the lease, entitled "Notice of Default," provided that,

Tenant shall give written notice of any failure by Landlord to perform any of Landlord's obligations under this Lease to Landlord and to any ground lessor, mortgagee or beneficiary under any deed of trust encumbering the Premises whose name and address have been furnished to Tenant in writing. Landlord will not be in default under this Lease unless Landlord (or the ground lessor, mortgagee or beneficiary) fails to cure the nonperformance within thirty (30) days after receipt of Tenant's notice. However, if the nonperformance reasonably requires more than 30(30) days to cure, Landlord will not be in default if the cure is commenced within the 30-day period and is thereafter diligently pursued to completion.

Paragraph 7 of the non-disturbance agreement with Southwest Bank stated that,

Lessee agrees that it shall deliver to Bank written notice of each and every default by Lessor under the Lease, and agrees not to exercise any rights or remedies under the Lease unless Bank fails to cure such default with[sic] thirty (30) days, or within such longer period as may be reasonably necessary if such default cannot be cured within thirty (30) days after Bank has received such notice....

The above provisions clearly required Primo's to provide both Cheung–Loon and Southwest Bank with written notice of an alleged breach of the lease and a thirty-day opportunity to cure before appellees could pursue remedies for default. Appellees argue that Primo's repeatedly informed Cheung–Loon it was being exclud-

ed from the parking lot for months before it terminated the lease. The summary judgment evidence shows, however, that all of the notifications to which appellees refer were oral, not written as required by the lease and non-disturbance agreement. The only written "notification" Primo's provided was its May 2008 letter terminating the lease agreement. To the extent this letter could be considered a written notification of default, Primo's ceased paying rent less than two weeks after the letter was sent and, therefore, did not provide Cheung–Loon with a thirty-day opportunity to cure. It is undisputed that Primo's never provided notification of Cheung–Loon's alleged default to Southwest Bank.

Furthermore, appellees point to no evidence that any of the alleged notifications informed Cheung–Loon of their position that the lease entitled Primo's to sole and exclusive use of the parking lot, the contractual right they now claim was breached. To the contrary, the evidence appellees rely on to show notice addresses only the *extent* to which the tenants of 3317 McKinney Avenue were using the parking lot, not the fact that they were infringing on Primo's claimed exclusive rights. Accordingly, appellees provided no evidence to show that it complied with the conditions precedent to bringing an action for breach of contract and a declaration that the contract was breached.

■ Appellees next argue that it was unnecessary for Primo's to provide notice

of default because any such notice would have been futile and the law does not require a party to perform a futile act. *See DiGiuseppe v. Lawler,* 269 S.W.3d 588, 594–95 (Tex.2008). Appellees introduced no evidence, however, of any conduct by Cheung–Loon occurring before Primo's terminated the lease that would indicate the futility of a demand for performance. Appellees' only evidence of Cheung–Loon's pre-termination conduct is the testimony of a Primo's employee that Cheung–Loon took "no corrective action" after he repeatedly informed Cheung–Loon of the "extensive use" of the parking lot by the tenants of 3317 McKinney Avenue. Cheung–Loon's inaction following complaints of "extensive use" does not amount to a repudiation of an alleged contractual obligation to provide exclusive use of the lot.[1] In addition, appellees provided no evidence or argument to show that notice to Southwest Bank would have been futile. Absent a repudiation by Cheung–Loon, Primo's was required to provide it and Southwest Bank with notice of the alleged default and an opportunity to cure. *Id.* Because the record shows appellees failed to provide any evidence that they met the conditions precedent to recovery under the contract as a matter of law, the trial court erred both in granting summary judgment for appellees on their claims for breach of contract and declaratory judgment and in failing to grant a no-evidence summary judgment in favor of Cheung–Loon on those claims.

1. Primo's also points to Cheung–Loon's actions following its receipt of the May 2008 termination letter to show the futility of providing notice. Primo's provided evidence that, after it received the letter, Cheung–Loon posted signs in the parking lot stating the lot was for the use of both Primo's and the tenants of 3317 McKinney Avenue. Nowhere in the termination letter did Primo's indicate it believed the lease entitled it to exclusive use

of the lot such that Cheung–Loon's actions could be considered a repudiation. Even if Cheung–Loon's actions in posting the signs could be considered a refusal to abide by the contract, these actions did not occur until after Primo's terminated the lease and stopped making rental payments. Accordingly, Primo's cannot rely on these actions to excuse its performance under the contract.

Cheung–Loon also moved for a no-evidence summary judgment on appellees' remaining claim for fraud. To support its fraud claim, appellees were required to provide more than a scintilla of evidence that Cheung–Loon made a material and false representation of fact. *See Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.-El Paso 2010, pet. denied). The misrepresentation upon which appellees based their claim was an alleged statement by Cheung–Loon at the time the lease was created that the contract provided Primo's with exclusive use of the parking lot. Cheung–Loon contends any evidence of such a representation would not support appellees' claim for fraud because a representation as to the legal effect of a document is not a representation of fact. We agree.

Generally, a representation regarding the legal effect of a document is a statement of opinion, not a statement of fact. *See Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987). The recognized exceptions to this general rule include a representation made by a party having superior knowledge who takes advantage of another's ignorance, a representation as to legal rights where there is a fiduciary or confidential relationship, and a representation regarding legal rights if it was both intended and understood to be a representation of fact. *Id.* The last of these exceptions does not apply if the parties are in an equal bargaining position with equal access to legal advice. *Id.* This is because under such circumstances each party has an opportunity to make their own investigation and determination of the legal effect of their actions. *Id.*

In this case, appellees presented no evidence that Cheung–Loon had superior knowledge related to the lease transaction. Nor did it present any evidence of a fiduciary or confidential relationship. And, even if we assume Cheung–Loon's alleged statement was both intended and understood to be a representation of fact, the evidence shows that Cheung–Loon and Primo's were both corporations involved in an arms-length transaction, not parties in an unequal bargaining position. Because appellees presented no evidence to support its assertion that Cheung–Loon made an actionable misrepresentation of fact, we conclude the trial court erred in failing to grant a no-evidence summary judgment on appellees' fraud claim.

Having concluded appellees were not entitled to recover on their claims against Cheung–Loon, we must now determine whether Cheung–Loon met its burden to show it was entitled to summary judgment on its breach of contract claim. In its first motion for partial summary judgment, Cheung–Loon contended Primo's breached the lease in two different ways: by failing to obtain a certificate of occupancy and by improperly terminating the lease. We address each alleged breach in turn.

Paragraph 6.03 of the lease states that "[i]f required, Tenant shall obtain a Certificate of Occupancy from the municipality in which the Property is located prior to occupancy of the Premises." The lease does not specify who may require the certificate and there is no evidence that Primo's was requested to obtain one before it began to occupy the parking lot. On July 20, 2007, Cheung–Loon sent Primo's a letter stating for the first time that the City of Dallas was requiring a certificate of occupancy for the lot. Cheung–Loon sent similar letters on March 4, 2008, April 16, 2008, June 4, 2008 and July 16, 2008 making demands on Primo's to obtain a certificate and stating that the failure to do so would be a default under the terms of the lease. Cheung–Loon relied on these letters as summary judgment proof that Pri-

mo's was required to obtain a certificate of occupancy. It is undisputed that Primo's never obtained a certificate for the parking lot, and Cheung–Loon contends this failure constituted a breach of the lease as a matter of law.

■ In response to the motion for summary judgment, Cervantes submitted an affidavit stating that neither he nor any other employee of Primo's was able to verify with the City of Dallas that a certificate of occupancy was required for the parking lot. In addition, the evidence shows that Primo's continued to occupy the lot for approximately a year after the City allegedly required the certificate of occupancy. We conclude this evidence was sufficient to raise a genuine issue of material fact about whether a certificate of occupancy was required and, therefore, whether Primo's breached the lease by failing to obtain one.

■ Cheung–Loon also contended Primo's breached the lease by repudiating the agreement in its May 2008 letter to Cheung–Loon and failing to perform any of its obligations under the lease, including payment of rent, on or after June 1, 2008. The improper termination of a contract is a breach of contract as a matter of law. *Pinnacle Anesthesia Consultants, P.A. v. Fisher,* 309 S.W.3d 93, 99 (Tex.App.-Dallas 2009, pet. denied).

Appellees do not dispute that Primo's terminated the lease and stopped performing its contractual obligations as of June 1, 2008. Appellees contend the termination was proper and its performance under the lease was excused by Cheung–Loon's prior breach of failing to provide Primo's with exclusive use of the lot. As discussed above, however, Cheung–Loon cannot be held to have breached the lease by failing to provide exclusive use of the lot because Primo's failed to give Cheung–Loon and Southwest Bank notice of the alleged

breach and an opportunity to cure. Because Cheung–Loon cannot be held to have breached the lease as a matter of law, the alleged breach cannot justify Primo's termination of the contract and failure to perform.

In response to Cheung–Loon's claim for breach of contract, appellees also asserted numerous affirmative defenses including want of consideration, failure of consideration, fraud, estoppel, waiver, and duress. Cheung–Loon moved for a no-evidence summary judgment on each of the asserted defenses in its first motion for partial summary judgment.

Cheung–Loon argues that appellees failed to make any response to its no-evidence motion for summary judgment on the affirmative defenses of want of consideration and failure of consideration. An examination of appellees' response to Cheung–Loon's motion shows that they did not directly address either defense. Appellees argue, however, that the dispute centers on Primo's inability to use the parking area it bargained for and, therefore, all the evidence presented in support of appellees' claim for breach of contract also supports their contention that there was an absence of consideration.

■ We first note that a want or lack of consideration is different from a failure of consideration. A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties. *See Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex.App.-Tyler 2010, no pet.). Without a mutuality of obligation, a contract is unenforceable. *Id.* In contrast, a failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails. *Id.*

In this case, there is no dispute that the lease, as written, imposed obligations on both parties; Cheung–Loon was required to provide Primo's with use of the parking lot at 3321 McKinney Avenue and appellees were required to, among other things, pay rent for Primo's use of the lot. Appellees provided no evidence that the contract was unenforceable due to a lack of consideration at its inception. Accordingly, the trial court erred in failing to grant Cheung–Loon a no-evidence summary judgment on the affirmative defense of want of consideration.

A failure of consideration occurring after a contract's inception constitutes a defense to an action on the written agreement. *See McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex.App.-Dallas 2006, no pet.). The affirmative defense defeats summary judgment if the nonmovant presents evidence that it did not receive the consideration set forth in the agreement. *Id.* A failure of consideration may be either partial or total. A total failure of consideration is ground for cancellation or recission of the contract. *See Food Mach. Corp. v. Moon*, 165 S.W.2d 773, 775 (Tex.Civ.App.-Amarillo 1942, no writ). A partial failure of consideration will not invalidate the contract and prevent recovery thereon, but is a defense pro tanto. *See Huff v. Speer*, 554 S.W.2d 259, 263 (Tex.Civ.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.).

The dispute here centers on whether Primo's was able to use the parking lot to the extent it bargained for. Appellees provided evidence that, one year into the lease term, Cheung–Loon's other tenants began using most, if not all, of the parking spaces in the lot Primo's leased for its own use. Even if Primo's was not entitled to exclusive use of the lot, which we do not decide, the lease clearly entitled it to use the lot for its customers' parking.

Because appellees provided some evidence showing it was either totally or partially prevented from using the lot, we conclude appellees raised a fact issue on failure of consideration. Accordingly, the trial court correctly denied Cheung–Loon's motion for a no-evidence summary judgment on this affirmative defense. Furthermore, because appellees raised a fact issue on this affirmative defense, the trial court correctly denied Cheung–Loon's motion for summary judgment on its claim for breach of contract.

Appellees' affirmative defenses of fraud and estoppel were both based upon the same alleged misrepresentation they used to support their fraud claim. As with the fraud claim, appellees were required to provide some evidence of a false representation of a material fact to defeat Cheung–Loon's motion for no-evidence summary judgment on these defenses. Because the alleged statements upon which appellees relied were not representations of fact upon which appellees could rely, the trial court erred in not granting summary judgment against appellees on their affirmative defenses of fraud and estoppel. *See Fina Supply*, 726 S.W.2d at 540.

Although appellees asserted the affirmative defense of waiver in its responsive pleading, the defense is not asserted against Cheung–Loon's claim for breach of contract. Rather, appellees' contention is that Cheung–Loon waived its right to argue the lease was non-exclusive by waiting over a year before allowing other tenants to use the lot. In essence, appellees have asserted waiver as an affirmative defense to Cheung–Loon's defense to appellees' breach of contract claim. We have already concluded that Cheung–Loon cannot be held liable for breach of the lease because Primo's failed to give the notice required as a condition precedent to recovery. Because Cheung–Loon cannot be held liable

for breach of the lease, appellees' affirmative defense of waiver, even if valid, no longer has any legal effect on the case. In effect, the defense is moot.

■■■■ Even if the defense is not moot, appellees presented no evidence to support it in response to Cheung–Loon's motion for a no-evidence summary judgment. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003). There is no waiver if the person sought to be charged says or does nothing inconsistent with an intent to rely upon such right. *Id.* Appellees presented no evidence of any statements or conduct by Cheung–Loon that was inconsistent with it asserting a right to allow others to use the parking lot. Appellees rely entirely on Cheung–Loon's one-year delay before asserting its alleged right. But absent evidence showing that timeliness was an issue, we cannot conclude Cheung–Loon's choice not to immediately exercise its alleged right was inconsistent with its assertion that such a right existed. Accordingly, the trial court erred in failing to grant summary judgment on this defense.

Finally, Cheung–Loon moved for a no-evidence summary judgment on appellees' affirmative defense of duress. In their brief on appeal, appellees voluntarily relinquished this defense as it related to the Cheung–Loon's breach of contract claim. Accordingly, it is unnecessary for us to address the merits of this defense.

Based on the foregoing, we conclude the trial court erred in granting summary judgment in favor of appellees on their claims for breach of contract and declaratory judgment. We also conclude the trial court erred in failing to grant summary judgment in favor of Cheung–Loon on appellees' claims for breach of contract, declaratory judgment, and fraud and on their affirmative defenses of want of consideration, fraud, estoppel, and waiver. We affirm, however, the trial court's denial of summary judgment on Cheung–Loon's breach of contract claim and appellees' affirmative defense of failure of consideration. Our resolution of Cheung–Loon's first issue makes it unnecessary for us to address its second issue.

We reverse the trial court's judgment and render judgment that appellees take nothing by their claims against Cheung–Loon. We also render judgment dismissing appellees' affirmative defenses of want of consideration, fraud, estoppel, and waiver. We remand the remainder of the cause to the trial court for further proceedings.