**Reverse and Remand and Opinion Filed August 31, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-00052-CV
_____

**TRO-X, L.P., Appellant**

**V.**

**EAGLE OIL & GAS CO., Appellee**

## On Appeal from the 116th Judicial District Court
## Dallas County, Texas
## Trial Court Cause No. DC-16-01439

# MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Whitehill
Opinion by Justice Whitehill

This appeal follows a second suit regarding the parties' joint effort to acquire and sell oil and gas leases in a specific area. The first case resulted in a trial court judgment that appellant TRO-X, L.P. was entitled to recover damages from appellee Eagle Oil & Gas Co. because Eagle deprived TRO-X of its right to retain certain property interests by selling the pertinent leases to a third party. Our sister court in Eastland, however, reversed that judgment, holding that Eagle did not deprive TRO-X of its retained interest because TRO-X "always held equitable title to those interests . . . ." *See Eagle Oil & Gas Co. v. TRO-X, L.P.,* 416 S.W.3d 137, 149 (Tex. App.—Eastland 2013, pet. denied).

TRO-X argues here that it is entitled to recover subsequent production proceeds arising from the retained interests. The trial court (i) granted summary judgment for Eagle based on its

motion asserting res judicata, collateral estoppel, waiver, and limitations defenses and (ii) awarded Eagle attorney's fees based on the denial of TRO-X's request for declaratory relief. TRO-X appeals from that judgment. But there is no evidence that the parties addressed or litigated in the Midland trial what would happen if it turned out that TRO-X had always held equitable title to its interests.

We reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

The facts and relevant contract terms are discussed thoroughly in the Eastland opinion. Therefore, we discuss them only as necessary to decide this case. Furthermore, TRO-X limits this appeal to proceeds Eagle received after the Midland suit and after February 8, 2012 (that being four years before TRO-X filed this suit) from the interests that the Eastland court held that TRO-X always held equitable title to (the Equitable Interests). So, we limit our discussion accordingly.

TRO-X and Eagle entered into two acreage acquisition agreements to acquire, market, and sell oil and gas interests to third parties. The first agreement, the South Haley Agreement, was signed in April 2005. But other than defining certain terms used in the contract involved here, the South Haley Agreement is not at issue in this case.

In September 2005, Eagle and TRO-X signed the "New Prospects and Amendment No. 1 to the South Haley Agreement" (the New Prospects Agreement). The New Prospects Agreement provides that Eagle will "use reasonable efforts to acquire [oil and gas leasehold] interests in the New Prospects," take all such interests "in the name of Eagle," and bear all acquisition costs up to $3,000,000 within the first year of the agreement.

The New Prospects Agreement also included a formula under which any cash and non-cash sale proceeds (including overriding royalties and back-in working interests) would be shared

between the parties after expenses. The New Prospects Agreement's term was for "the greater of the term of the New Prospect AMI [Area of Mutual Interest] or two (2) years from the Effective Date," but § V.A provided that if any interest or extension or renewal of an interest was sold after the end of the term "the proceeds will nevertheless be shared pursuant to Section II hereof."

Although the "general intent was to sell the leases at a profit," either party could "elect to keep an interest" for itself. Specifically, § II.A grants Eagle and TRO-X the unilateral right to "retain an unpromoted working interest" in the prospect for up to 40% for TRO-X and 60% for Eagle, and provides that "[u]npromoted working interests shall be chosen by the Parties prior to the sale of all working interests to third parties on a promoted basis."[1]

The New Prospects Agreement § III also created the AMI. Neither the parties nor their affiliates could acquire any interests in the AMI for a year. After that, if an interest was acquired, the acquirer had to notify the other party. On receiving that notice, the other party had ten days to notify the acquiring party whether it wanted to acquire its share of the interest under the same terms as the acquiring party. The responding party's election was to be accompanied by payment of its "share of actual, out-of-pocket third party costs."

Over the next nine months, Eagle purchased over $10 million in leases covering approximately 80,000 acres in New Prospects. Because Eagle acquired more than 25,000 acres, TRO-X's proportionate share decreased from 40% to 35% as provided in New Prospects Agreement, § IV.B.

---

[1] The South Haley Agreement defined "unpromoted working interests" to mean "that the chosen working interest shall bear all third party out-of-pocket costs (i) in the acquisition of Interests, (ii) for geological and geophysical data and analysis, (iii) for running and curing title and title opinions, and (iv) for costs incurred in preparing to drill, drilling, completing, equipping and pipeline costs under the terms of the Prospect Agreements, including operating and overhead charges provided for therein." 416 S.W.3d at 141 n. 3.

In April 2007, Eagle Partners, an Eagle affiliate, purchased an undivided 50% working interest in the New Prospects.[2] Eagle continued to market the remaining undivided 50% in the New Prospects.

In September 2007, a dispute developed between the parties regarding certain additional acres Eagle acquired. Consequently, TRO-X sued Eagle in Midland County, asserting breach of contract, declaratory judgment, and breach of fiduciary duty causes of action. TRO-X subsequently amended its petition to request an accounting to determine the proceeds it was entitled to receive under the New Prospects Agreement.

In April and June 2008, while the Midland suit was pending, Eagle closed two sales to Chesapeake, in each instance reserving or retaining an overriding royalty interest or back-in working interest.[3] Thereafter, the parties disagreed regarding whether Eagle had divested TRO-X of its rights to a share of those retained interests. TRO-X in August 2010 sent Eagle a letter stating:

> In order to avoid your spending unnecessary time preparing assignments of interest, TRO-X intends to seek monetary damages for the breach of [Eagle]. Therefore, assignments of any interests related to this litigation will not be accepted.

The Midland court appointed an auditor to resolve the parties' accounting issues under the New Prospects Agreement. The auditor concluded that TRO-X was entitled to $1,064,789.45 in proceeds.

TRO-X amended its petition to complain about the Chesapeake sales and alleged, among other things, that (i) Eagle obtained cash and noncash benefits that should have been disclosed, offered, and/or distributed to TRO-X and TRO-X was denied its right to acquire its proportionate share of those interests; (ii) Eagle breached the New Prospects Agreement by failing to properly

---

[2] Eagle Partners was a company formed by EnCap Investments, a mezzanine finance group to which Eagle marketed the New Prospects. EnCap required that Eagle invest 10% of its own money and manage Eagle Partners.

[3] There were two sales to Chesapeake. The first in April 2008 covered the Collier East Prospect and the Collier West Prospect with 100% to Chesapeake. The second covered the Balmorhea Ranch Prospect, which was sold 85% to Chesapeake and 7.5 % each to Eagle and Eagle Partners.

and equitably distribute the proceeds and benefits; and (iii) Eagle breached the New Prospects Agreement because it did not offer TRO-X an opportunity to acquire its interest in the Chesapeake sales. TRO-X also alleged that Eagle breached a fiduciary duty to TRO-X by acquiring benefits through the sale of interests it did not share with TRO-X.

Eagle moved for partial summary judgment on TRO-X's breach of fiduciary duty claim, which the trial court granted.

The principal issue in the Midland trial was whether Eagle breached the contract by preventing TRO-X from acquiring its proportionate share of an overriding royalty interest and back-in working interest in the Chesapeake sales. Thus, the jury question read: "Did Eagle fail to comply with the Agreement . . . by preventing TRO-X from acquiring its proportionate share of the overriding royalty interest and working interest back-in acquired in the sale to Chesapeake?" The jury answered "yes," and awarded TRO-X $7,680,000 in damages.[4]

After trial, the trial court concluded that Eagle was entitled to a $685,000.65 setoff for expenses reflected in the audit, and TRO-X was therefore entitled to $379,788.80 under the audit. TRO-X elected to recover under the jury verdict rather than the audit.

On appeal, Eagle challenged the legal sufficiency of the evidence to support the jury's finding. Eagle maintained that TRO-X was not deprived of any Equitable Interests because TRO-X still held equitable title to them. Specifically, Eagle argued that (i) equitable title to the overriding royalty interests and back-in working interests was retained in the Chesapeake sales and (ii) TRO-X always held equitable title to those interests.

The Eastland court agreed with Eagle and reversed that portion of the trial court's judgment. *Eagle Oil & Gas*, 416 S.W.3d at 149-50. In so doing, the Eastland court noted that the

---

[4] The jury also found that Eagle failed to comply with the agreement by depriving TRO-X of its right to retain an unpromoted working interest by selling to Eagle Partners on a promoted basis without consulting with TRO-X and by sending a certain letter, but those issues are not at issue here. This suit only concerns TRO-X's equitable title to its share of the overriding royalty and back-in working interests from the Chesapeake transactions.

jury was not asked to determine whether Eagle failed to make an assignment of the interest to TRO-X and concluded that:

> Because TRO-X always held equitable title to those interests, Eagle . . . could not, as a matter of law, deprive TRO-X of them.

*Id.*

TRO-X moved for rehearing. The Eastland court denied the motion and declined TRO-X's request to modify the judgment to reflect that TRO-X was entitled to receive record title to TRO-X's beneficial interests held in trust by Eagle because TRO-X did not plead for or seek record title for those interests. *Eagle Oil & Gas Co. v. TRO-X L.P.*, 427 S.W.3d 580, 580 (Tex. App.—Eastland 2014, pet. denied).

TRO-X sought review in the Texas Supreme Court. While that petition was pending, TRO-X filed this suit but stated it would non-suit the case if the supreme court concluded that TRO-X was entitled to legal title. TRO-X also requested an abatement of the case pending the outcome in the supreme court. The Texas Supreme Court denied review.

In the present suit, TRO-X asserted claims for breach of contract, breach of fiduciary duty, and declaratory judgment regarding its rights in the Equitable Interests and related damages. Specifically, TRO-X's first amended petition alleged that, "TRO-X files this lawsuit seeking a declaration of its rights in the Equitable Interests and recovery of any proceeds of the Equitable Interests received by Eagle or, in the alternative, money damages equal to the fair market value of the Equitable Interests." TRO-X's appellate briefs clarify that it seeks proceeds from the Equitable Interests that accrued on or after February 8, 2012 (four years before this suit was filed).

Eagle moved for summary judgment based on four affirmative defenses—res judicata, collateral estoppel, statute of limitations, and waiver. TRO-X responded.[5] TRO-X also moved for partial summary judgment, which the trial court denied.

The trial court granted Eagle's motion without saying why and awarded Eagle attorney's fees based on the denial of TRO-X's declaratory judgment claim. TRO-X appeals that judgment.

## II. ANALYSIS

### A. Standard of Review

We review the grant of a summary judgment de novo. *See Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013). In a traditional summary judgment motion, the moving party has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Where a defendant moves for summary judgment on an affirmative defense, it must prove every essential element of its defense as a matter of law. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam). Once the defendant establishes a right to summary judgment as a matter of law regarding an affirmative defense, the burden of production shifts to the plaintiff to present evidence raising a genuine issue of material fact on at least one element of that defense, thereby precluding summary judgment. *See FDIC v. Lenk,* 361 S.W.3d 602, 609 (Tex. 2012).

An appellate court must take as true evidence favorable to the non-movant, indulge every reasonable inference from the evidence in the non-movant's favor, and resolve any doubt in favor of the non-movant. *See Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.

---

[5] The trial court sustained Eagle's objections to paragraphs three and five of the Greg McCabe affidavit TRO-X filed in support of its response, and TRO-X does not challenge that ruling on appeal. We therefore exclude that evidence from our analysis.

2004). "A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence." *In re Estate of Hendler*, 316 S.W.3d 703, 707 (Tex. App.—Dallas 2010, no pet.).

TRO-X's first issue broadly asserts that the trial court erred in granting summary judgment dismissing TRO-X's claims. That broad issue allows TRO-X to assert subsidiary arguments attacking the grounds asserted in Eagle's summary judgment motion, which TRO-X does. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). We therefore address TRO-X's arguments regarding each of those grounds.

**B.      TRO-X's Fourth Argument:  Did Eagle prove waiver as a matter of law?**

Eagle's summary judgment motion argued that TRO-X waived any complaint that Eagle prevented TRO-X from acquiring its proportionate share of the Equitable Interests because there are "unequivocal writings and admissions" that establish waiver as a matter of law. Eagle's argument included reliance on TRO-X's no-assignment letter and trial testimony from George McCabe, the president of TROX's general partner, that TRO-X would not accept assignments under the New Prospects Agreement and would not accept properties because it "didn't want them anymore." TRO-X responded that its election in the Midland suit to seek damages was not a disavowal of its rights to share in future benefits related to the Equitable Interests if TRO-X still held equitable title to those interests. We agree with TRO-X.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Waiver may be established by conduct if that conduct is unequivocally inconsistent with claiming a known right. *Van Indep. Sch. Dist. V. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005).

Eagle does not urge that TRO-X expressly waived its rights if it turned out that the Chesapeake sales did not in fact deprive TRO-X of its equitable title to the Equitable Interests.

Thus, we consider whether Eagle conclusively proved that TRO-X's Midland suit conduct impliedly waived its current claims.

Eagle's waiver argument takes TRO-X's Midland suit statements out of that case's context and tries to apply them to the different context presented here. The Midland case was tried in the context of TRO-X's claim that Eagle's handling of the Chesapeake sales deprived TRO-X of its equitable title and what that title was worth at that time. But here, based on the Eastland Court's holding, TRO-X claims that it has always held equitable title in the Equitable Interests and that Eagle is improperly refusing to give TRO-X its share of the current benefits that flow from that equitable title.

We conclude that Eagle's evidence offered to support its waiver defense fails to establish as a matter of law that TRO-X's Midland suit statements were so inconsistent with TRO-X's current position that they expressed TRO-X's unequivocal intent to waive any future benefits that result from the Equitable Interests if it were later determined that TRO-X always held equitable title to the Equitable Interests.

Furthermore, the election of remedies doctrine prevents double recovery for a single wrong. *See Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 293 (Tex. App.—San Antonio 2011, pet. denied). But there is no election of remedies when one first unsuccessfully pursues a right or remedy which proves unfounded and then pursues one that is allowed. *Cocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 852 (Tex. 1980); *see Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987).

For example, *Fina Supply* was a letter of credit dispute where the letter of credit beneficiary claimed that the issuing bank wrongfully dishonored the letter of credit. *Fina Supply*, 726 S.W.2d at 541. The bank sued for a declaratory judgment that the beneficiary's document presentment was deficient. The beneficiary filed a separate suit against the bank. The trial court consolidated

the suits. The beneficiary's claims included breach of contract, fraud, and a request to reform the letter of credit. The trial court entered a fraud-based judgment for the beneficiary following a jury verdict. The trial court also reformed the letter of credit as the beneficiary requested. *Id.*

The bank appealed, and the court of appeals reversed and rendered a take-nothing judgment against the beneficiary. The crux of that court's opinion was that as a matter of law the bank could not have misrepresented to the beneficiary the legal effect of a letter of credit amendment because those statements were opinions expressed between sophisticated parties familiar with letters of credit. *Id.*

The supreme court affirmed, but on different grounds concerning the reformation claim. Specifically, the supreme court held that the election of remedies doctrine did not bar the beneficiary's reformation claim because as a matter of law the beneficiary had no cause of action for fraudulent misrepresentation. *Id.*

In reaching that holding, the supreme court explained that the election of remedies doctrine applies where the party against whom it is being asserted "has obtained a specific form of remedy" and is now seeking to obtain a "different inconsistent remedy for the same wrong." *Id.* Another important aspect of the supreme court's opinion is that an "election of remedies does not occur when a plaintiff mistakenly pursues a remedy which does not exist as a matter of law." *Id.*

We reject Eagle's waiver argument because TRO-X did not obtain relief regarding its current claim that Eagle breached the contract or fiduciary duties after the Midland suit by denying TRO-X its share of future royalty and working interest proceeds that Eagle retained despite the Chesapeake sales. Moreover, the Eastland court held that TRO-X mistakenly pursued a claim that it lost as a matter of law. Finally, to conclude as a matter of law that TRO-X intentionally waived its future rights in the Equitable Interests—if it still held those rights—by alleging that the Chesapeake sales stripped TRO-X of those interests would give Eagle a windfall and be manifestly

unjust. *See Castle Tex. Prod. Ltd. P'ship v. Long Trusts*, 134 S.W.3d 267, 280 (Tex. App.—Tyler 2003, pet. denied).

Therefore, we conclude that Eagle did not establish its waiver defense as a matter of law.

**C.       TRO-X's First Argument:  Did Eagle conclusively prove res judicata?**

**1.       The Parties' Positions**

TRO-X argues that Eagle did not conclusively establish its res judicata defense because TRO-X's current claims were not and could not have been litigated in the Midland trial since its current claims pertain to Eagle's conduct after, and were not ripe during, the Midland suit.  To that end, TRO-X argues it could not have litigated its current claim that Eagle failed to convey post-Midland trial "proceeds" derived from TRO-X's Equitable Interests because (i) the relief TRO-X seeks in this case is based on Eagle's conduct after the Midland trial and (ii) there were no commercial production related proceeds from those interests until months after that trial ended.  That is, TRO-X asserts that the current case concerns different manners of breach and different forms of injury than were involved in the Midland suit.  TRO-X adds that the continuing contract doctrine also permits it to sue for post-Midland trial damages.

Eagle responds that res judicata bars TRO-X's claims because they are based on the same claims and transactions that were raised or could have been raised in the Midland suit.  Also according to Eagle, TRO-X's arguments that it is suing for periodic payments under a continuing contract and its claims were not ripe in the Midland suit are unsupported by the pleadings and are contrary to TRO-X's statements in the Midland suit that there was continuous drilling and production on the leases and Eagle failed to distribute the proceeds and benefits therefrom.  Eagle further argues that the New Prospects Agreement expired by July 2010, and TRO-X treated the New Prospects Agreement as terminated by suing for all future proceeds the interests would generate.

## 2.     Res Judicata Principles

"Generally, res judicata prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). The party asserting res judicata must prove: (i) a prior final determination on the merits by a court of competent jurisdiction, (ii) identity of parties or those in privity with them, and (iii) a second action based on the same claims as were raised or could have been raised in the first action. *Id.* Res judicata seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex. 1992).

Texas follows a transactional approach to determine whether res judicata applies. *Id*. at 631. Under this approach, "a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit." *Citizens*, 217 S.W.3d at 449. Determining what constitutes the subject matter of a suit for res judicata purposes

> requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of the action. Any cause of action that arises out of those same facts should, if practicable, be litigated in the same lawsuit.

*Barr*, 837 S.W.3d at 630.

We apply a pragmatic approach, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Citizens*, 217 S.W.3d at 449.

Ordinarily, "Where there is a legal relationship, such as under a lease, a contract, or a marriage, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata." *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77

S.W.3d 487, 497 (Tex. App.—Texarkana 2002, pet. denied). Claims in a business relationship should be combined when they involve common core facts. *Id.* And a claim's contingent nature generally does not preclude the operation of res judicata. *See id.* at 498.

On the other hand, a judgment in one suit will not operate as res judicata to a subsequent suit on the same question between the same parties where, in the interval, facts have changed or new facts have occurred that may alter the parties' legal rights or relations. *See Martin v. Martin, Martin & Richards*, 989 S.W.2d 357, 358-59 (Tex. 1998); *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949-50 (Tex. 1990); *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Likewise, causes of action that could not have accrued at the time of a previous suit are not barred by res judicata. *See Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001). Thus, breach of contract claims that could not have been brought in a prior suit because the alleged breaches that are the subject of the second suit had not yet happened are not barred in a subsequent suit. *See id.*; *Hernandez*, 56 S.W.3d at 116 ("For res judicata to apply, a claim must be in existence at the time suit is filed, and cannot merely be a prospective anticipated claim.").

There being no disagreement regarding res judicata's first two elements being met here, we focus on whether TRO-X's claims that are the subject of this appeal were brought or could have been brought in the Midland suit.

### 3. Were TRO-X's claims brought in the Midland Suit?

Eagle's summary judgment motion relied on TRO-X's pleadings, statements made in the Midland proceedings, and currently claimed damages to demonstrate that TRO-X's present claims were also asserted in Midland and were all part of a single transaction, the Chesapeake sale. We begin by comparing the pleadings in this case with TRO-X's Midland suit claims.

In Midland, TRO-X's live pleading asserted that Eagle breached the New Prospects Agreement by preventing TRO-X from receiving its Equitable Interests due to the Chesapeake sales. TRO-X also alleged that Eagle breached its fiduciary duty to TRO-X by (i) "improperly invoking the AMI provision in an attempt to divest TRO-X of its ownership interest in the Additional Acreage" and (ii) selling interests that were "not unrelated and on terms that may have been less favorable than those which could have been obtained in an arms-length transaction."

However, TRO-X at this juncture asserts claims for:

- breach of contract and breach of fiduciary duty based on Eagle's failure after the Midland trial and in the four years prior to this suit to convey the proceeds derived from the Equitable Interests and to preserve and protect the Equitable Interests; and

- a declaratory judgment that TRO-X is entitled to receive all post Midland trial benefits received by Eagle that derive from the Equitable Interests.

As shown above, each of the Midland suit claims involve underlying factual premises that differ from the factual premises underlying the claims before us. That the New Prospects Agreement and the Equitable Interests are common to both cases does not necessarily mean that res judicata bars the current claims. To hold otherwise would apply res judicata to every case where there is some factual overlap, but that is not the law. *See, e.g.*, *Hernandez*, 56 S.W.3d at 116; *see also Marino*, 787 S.W.2d at 950.

As exists here, the nature and timing of the breaches alleged in the present matter differ factually from what the Midland suit involved. For example, the purported breaches in the Midland suit turned on facts that occurred before the trial in that case; whereas, the alleged breaches here involve post-Midland trial conduct. Furthermore, TRO-X's Midland suit claims revolved around whether the Chesapeake sales stripped TRO-X of its rights in the Equitable Interests. However, TRO-X's present claims revolve around production from the retained Equitable Interests after the Chesapeake sales.

–14–

Eagle further relies on statements made by TRO-X in the Midland case as showing that TRO-X was complaining about the Chesapeake sales and Eagle's failure to share the interests reserved in those transactions. For example, in Midland (i) TRO-X complained that it did not receive an assignment of an overriding royalty interest and back-in working interest when the Chesapeake sales occurred; (ii) the president of TRO-X's general partner said that TRO-X was suing for the value of the overrides and back-ins that were not assigned, and (iii) TRO-X argued it would have received income from the interests had it received an assignment. Similarly, Eagle relies on TRO-X's previous filings referencing "proceeds." We are not persuaded because those statements were premised on TRO-X's belief that Eagle had disposed of TRO-X's rights in the Equitable Interests and do not address the post-Midland trial conduct at issue here.

Eagle additionally contends that the damages here are the same as the damages requested in the Midland suit, because TRO-X seeks to recover the "fair market value of the interests" and TRO-X's Midland expert testified about the fair market value of and lost profits from the interests based on future proceeds the interests could have generated had Eagle not stripped TRO-X of its interests. In this case, however, TRO-X has limited its claims and requested damages to (i) events that happened after the Midland suit was tried and (ii) its purported share of production from the retained Equitable Interests.

Finally, Eagle relies on TRO-X's Eastland appellate motion for rehearing filings in which TRO-X argued that it holds title to the Equitable Interests and should be allowed to secure its rights under that equitable title. Significantly, however, the Eastland court concluded that these claims had not been raised in the Midland lawsuit. *Eagle Oil,* 427 S.W.3d at 580.

In sum, Eagle won the Midland suit because it established as a matter of law that it was still holding the assets at issue. We have found no indication that in the Midland suit the parties disagreed about, let alone litigated, what would happen if those assets later began producing in

commercial quantities. Accordingly, we conclude that Eagle did not conclusively establish that TRO-X's current claims were litigated in the Midland suit.

### 4       Could TRO-X's claims have been brought in the Midland suit?

We next address whether Eagle conclusively established that TRO-X's current claims "could have been brought" in the Midland suit. We conclude that Eagle did not do so.

TRO-X argues that its current claims could not have been brought in the Midland suit because TRO-X's current claims were not ripe then as there had been no production on the relevant leases. TRO-X adds that even had there been some commercial production from the Equitable Interests as of the Midland suit trial, res judicata still would not apply because those claims allege unpaid periodic payments and a cause of action for breach of a continuing contract does not accrue until the obligor fails to perform when due. We agree that Eagle did not conclusively prove that TRO-X's current claims were ripe during the Midland trial.

Res judicata does not bar claims in a later suit if the first court would not have had subject matter jurisdiction over those claims. *See Lopez v. Sulak*, 76 S.W.3d 597, 606 (Tex. App.—Corpus Christi 2002, no pet.); *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989) (citing Restatement (Second) of Judgments § 26(1)(C) (1982)). Furthermore, "ripeness" is a threshold component of subject matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). And, "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Waco Indep. Sch. Dist. v. Gibson*, 222 S.W.3d 849, 851-52 (Tex. 2000).

Here, TRO-X's current claims were not ripe during the Midland trial because there was no then existing, concrete dispute regarding the subject matter of TRO-X's current claims—what happens if the Equitable Interests produce income streams from oil and gas production after the Midland trial. According to TRO-X, that required concrete dispute did not exist during the

–16–

Midland trial because there had been no production from the Equitable Interests and Eagle thus had not denied TRO-X the resulting economic benefits.[6] We conclude that on this record Eagle did not conclusively prove the opposite to be the case.[7]

Rather, TRO-X's summary judgment evidence included this testimony from Eagle's Midland suit representative:

> Q: And was there ever any production established to which those overriding royalties or back-ins would be applicable in Collier and Balmorhea [part of the Chesapeake sale]?
>
> A: No, sir.

TRO-X's evidence also included Eagle's representations to the Eastland court that "no commercial production has been established on the subject acreage" and "there is no evidence that any overriding royalties or back-in working interest have been paid."

Eagle, however, maintains that TRO-X has taken inconsistent positions about production. Eagle's summary judgment evidence included TRO-X arguments and testimony from the Midland suit that:

- "there was evidence that a portion of the New Prospects Acreage was being maintained by drilling production";

- "there were two producing wells on the Collier leases";

- "some of the New Prospects acreage was being maintained by drilling and production";

- and TRO-X presented trial testimony of drilling and production on the leases "fairly continuously."

None of this evidence, however, conclusively establishes that the AMI leases at issue here were then producing commercially or that any such related proceeds were then due to TRO-X.

---

[6] TRO-X's interests were the rights to receive an income stream from overriding royalties or back-in working interests from production out of the Equitable Interests. That is, TRO-X's right to receive the money was due to the nature of the interest Eagle held for TRO-X.

[7] TRO-X's retained interests are only in the AMI, not in all portions of the leases in question.

Instead, this evidence would show only that there was some production on some of the leases in some amount that kept them in effect.

Eagle further argues that TRO-X's current claims are based on the same nucleus of operative facts and could have been raised in the Midland suit because in Midland (i) TRO-X repeatedly asserted that it held equitable title or an equitable interest in its proportionate share of the Equitable Interests and had the right to have those property rights assigned to it immediately when Eagle received them; (ii) TRO-X also complained about Eagle's failure to assign the interests in 2008 and argued it "would have received income" from the interests had there been an assignment; and (iii) TRO-X refused an assignment and elected to pursue damages based on the proceeds and lost profits the interests would have generated in the future or the fair market value of the interests. Thus, according to Eagle, TRO-X could have sought an assignment of the interests that would have allowed it to collect the proceeds generated from the Equitable Interests. We are not persuaded.

The conflicting summary judgment evidence does not conclusively establish that there had been any proceeds from production within the New Prospects AMI at the time the Midland suit was tried. Nor is there any evidence that the parties were disputing in the Midland suit what their respective rights and responsibilities would be if TRO-X still held equitable title to the Equitable Interests and that those interests produced oil or gas after the Midland trial. Construing the evidence most favorably to TRO-X, as we must, we hold that Eagle did not conclusively establish that there was a ripe controversy during the Midland trial that would have given that court subject matter jurisdiction over the claims currently before us.[8]

Eagle's "could have been brought" argument is akin to its waiver argument (in part II.B above) based on the premise that TRO-X's election of remedies in the Midland suit now precludes

---

[8] Nor are we aware of evidence that Eagle put TRO-X on notice that Eagle would take that position in the future.

its recovery based on remedies it elected not to pursue. But, despite the general rule that a party may not relitigate a cause of action merely by seeking different relief in a subsequent suit, when a party misconceives its rights and sues for relief to which it is not entitled on the facts pleaded, an adverse judgment does not bar a second action, on a different theory, for relief to which the party is entitled. *Moore v. Snowball*, 98 Tex. 16, 81 S.W. 5, 10 (1904); *White v. Bell*, 290 S.W. 849, 850-51 (Tex. Civ. App.—Waco 1927, writ ref'd); *see also Cocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d at 852; *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987) (when a plaintiff pursues a remedy that does not exist as a matter of law, no election occurs.)

Therefore, Eagle did not conclusively prove that TRO-X's claims were ripe and could have been asserted in the Midland suit. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000).

**D.     TRO-X's Second Argument:  Did Eagle prove collateral estoppel as a matter of law?**

Eagle's summary judgment motion argued that collateral estoppel bars two of TRO-X's issues in this case because they were fully litigated in the Midland suit. Those issues concern: (i) the existence of a fiduciary duty and (ii) whether Eagle prevented TRO-X from acquiring its share of the Equitable Interests. We disagree with Eagle as to the first premise, and we determine that the second point does not defeat TRO-X's claims because of the different nature of the claims in the two cases.

Collateral estoppel prevents relitigation of ultimate fact issues actually litigated and essential to a final judgment in a prior suit. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992). A party relying on a collateral estoppel defense must establish that (i) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (ii) those facts were essential to the judgment in the first action; and (iii) the party against whom the doctrine

is asserted was a party or in privity with a party to the first action. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

### 1. Does collateral estoppel bar TRO-X's fiduciary breach claim?

According to Eagle, TRO-X's current fiduciary breach claims were previously litigated because the Midland court granted partial summary judgment on TRO-X's fiduciary breach claims in that case. Although TRO-X offers several reasons why the trial court erred to the extent it granted summary judgment against TRO-X's current fiduciary breach claims, we need consider only its argument based on the principle that there can be no collateral estoppel by alternative holdings.[9]

The general rule is that there can be no estoppel by alternative holdings.[10] *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 522 (Tex. 1998). In *Johnson*, the supreme court cited with approval *Restatement of Judgments* § 27, which provides that:

> If a judgment of a court of first instance is based on determination of two issues either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

*Id.*; *see also Caprock Inv. v. Montgomery*, 321 S.W.3d 91, 97 (Tex. App.—Eastland 2010, pet. denied).

Paragraphs 5.03 through 5.06 of TRO-X's Midland live pleadings asserted breach of fiduciary duty claims based on three sources for such a duty and two forms of breach. The two forms of breach included Eagle's conduct in how it invoked the AMI provision when it acquired certain interests and how it sold certain interests, neither of which form of alleged breach is alleged in the current suit.

---

[9] Eagle contends that this issue was not raised in response to its motion for summary judgment. We disagree. TRO-X's response argued that collateral estoppel does not apply because it is not attempting to relitigate a previously decided issue. That is sufficient to encompass this particular reason why the issue was not decided. *See Lee v. Rogers Agency*, 517 S.W.3d 137, 164-65 (Tex. App.—Texarkana 2016, pet. denied).

[10] Alternative findings that are actually reviewed and affirmed by an appellate court, however, may have preclusive effect. *See Johnson*, 962 S.W.2d at 522.

Eagle and Eagle Partners filed a traditional motion for partial summary judgment in the Midland suit attacking TRO-X's fiduciary breach claims, arguing that as a matter of law there was no basis for concluding that Eagle owed TRO-X any fiduciary duties. That motion, however, also sought a summary judgment against TRO-X's contract breach, conspiracy to breach a contract, and aiding and abetting claims.

That same day, Eagle and Eagle Partners also filed a no-evidence summary judgment motion in which they attacked TRO-X's fiduciary breach claims, arguing that there was no evidence that (i) Eagle owed TRO-X a fiduciary duty, (ii) Eagle breached any such duty, and (iii) any such breach injured TRO-X. Thus, the Midland traditional motion and the no-evidence motion both argued that Eagle did not owe TRO-X any fiduciary duties. But the no-evidence motion also identified other elements for which there was no evidence supporting TRO-X's fiduciary breach claims.

The Midland court's September 22, 2011 Order on Defendants' Motions for Partial Summary Judgment recited that the court considered both motions and that "the Motions should be GRANTED in part and DENIED in part.[11] The trial court necessarily granted the traditional motion in part because that was the only motion that addressed the conspiracy claim, which the order dismissed. But one cannot discern the ground or grounds on which the trial court dismissed the fiduciary breach claims because (i) both motions addressed those claims and (ii) the no-evidence motion asserted multiple grounds attacking those claims. Thus, it is possible that the Midland court dismissed the fiduciary breach claims for reasons other than a lack of a fiduciary relationship.

---

[11] The order also grants summary judgment on TRO-X's claims for conspiracy, aiding and abetting, and breach of certain contract obligations, and denies summary judgment on breach of other contract provisions and tortious interference. *Id.*

–21–

Furthermore, because TRO-X did not appeal that ruling, the exception to the general rule of no preclusion based on alternative rulings that exists where there has been an appellate ruling does not apply here. *See Johnson*, 962 S.W.2d at 522.

**2.    Did Eagle previously defeat TRO-X's alleged contract breach claims asserted in this case?**

Next, Eagle urges that collateral estoppel applies because the Midland suit litigated the issue of whether Eagle deprived TRO-X of its interests. However, we have already concluded that the breaches involved in the two suits are different. Specifically, the Midland suit involved TRO-X's rights based on the premise that Eagle deprived TRO-X's right to the Equitable Interests themselves as real property due to the Chesapeake sales; whereas, this suit concerns the right to income streams from subsequent production from the Equitable Interests that the first suit established Eagle always held despite the Chesapeake sales. Thus, the relevant facts Eagle established in the Midland suit addressed different facts not relevant to the contract claims before us, and collateral estoppel does not bar TRO-X from claims based on the conduct alleged in the present case.

Accordingly, we conclude that Eagle did not establish as a matter of law that collateral estoppel defeats TRO-X's contract and fiduciary breach claims in this suit. *See Sysco*, 890 S.W.2d at 801.

**E.    TRO-X's Third Argument: Did Eagle conclusively prove its statute of limitations defense?**

Eagle's summary judgment motion argued that (i) to the extent TRO-X had title or rights in the interests, TRO-X suffered an injury and limitations began to run no later than June 2008—when Eagle completed the Chesapeake transaction, reserved the interests, and didn't assign TRO-X a share of the interests and (ii) even if limitations did not begin to run until 2012, TRO-X did

not exercise diligence in timely serving Eagle because TRO-X sued on February 8, 2016 but did not serve Eagle until July 5, 2016.

TRO-X argues that its claims are not time-barred because they are based on conduct that occurred within four years of its filing suit and did not arise until after the Midland suit was tried. TRO-X further argues that, at a minimum, there is a material fact issue about whether TRO-X was diligent in serving Eagle, and even if service did not relate back to the date of filing, then the actual service date would be the operative date of filing and TRO-X's claims would be for breaches that occurred after that date.

Breach of fiduciary duty and breach of contract claims are subject to a four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051. Claims for declaratory relief derive from claims for substantive relief, so the statute of limitations for the underlying action is generally applied to a declaratory judgment action. *See Schrock v. City of Baytown,* No. 01-13-00618-CV, 2015 WL 8486504, at *9 (Tex. App.—Houston [1st Dist.] Dec. 10, 2015, pet. denied) (mem. op.). A defendant seeking summary judgment based on limitations must prove when the cause of action accrued. *Barnes v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

Here, there is no summary judgment evidence establishing when TRO-X's claims accrued. Eagle's argument that the claims accrued in 2008 when the Chesapeake sales occurred ignores the fact that the Chesapeake sales involved only whether Eagle retained TRO-X's Equitable Interests, not when production generated proceeds from those interests occurred. That is, TRO-X's current claims concern different breaches and injuries than TRO-X asserted in Midland. Limitations as to the current claims accrued when the related breaches occurred. *See Barker v. Eckerman*, 213 S.W.3d 306, 301 (Tex. 2006). Furthermore, limitations began to run separately upon the

–23–

occurrence of each such separate breach.[12]  *Id.*  Absent evidence of when production payments were unlawfully withheld from TRO-X, there is no basis to determine when limitations began to run.  *See generally S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (claim accrues when wrongful act causes injury).

Eagle also argues that it was entitled to summary judgment on limitations because TRO-X's delay in serving its petition established a lack of diligence as a matter of law.  Given our preceding conclusion that Eagle did not establish when TROX's limitations period began to run, we do not address Eagle's lack of diligence issue.

**F.      TRO-X's Second Issue:  Is Eagle entitled to attorney's fees?**

The trial court awarded Eagle $175,819.50 for trial court attorney's fees and $260,000.00 conditional attorney's fees for appeal based on the declaratory judgment act.  *See* TEX. CIV. PRAC. & REM. CODE § 37.009. TRO-X argues that this fee award should be reversed (i) because the declarations sought duplicated its tort and contract claims and (ii) based on our disposition of this appeal.

An attorney's fees award under the declaratory judgment act must be "equitable and just." *Id*.; *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161-62 (Tex. 2004).  When a court reverses a declaratory judgment ruling, it may remand the attorney's fees issue to the trial court because it may no longer be equitable and just.  *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied).

We have concluded that the trial court erred in granting summary judgment on TRO-X's claims, including its declaratory judgment claims.  In light of that disposition, the attorney's fees

---

[12] Eagle argues that TRO-X did not preserve its "periodic payment" argument in the trial court.  We disagree.  TRO-X's summary judgment response relied on *Barker* to argue that limitations began to run separately each time Eagle did not share production proceeds from the Equitable Interests as Eagle received them.

award may no longer be equitable and just. We therefore resolve TRO-X's second issue in its favor.

### III.  DISPOSITION

We sustain TRO-X's issues, we reverse the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

170052F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TRO-X, L.P., Appellant

No. 05-17-00052-CV     V.

EAGLE OIL & GAS CO., Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-16-01439.
Opinion delivered by Justice Whitehill.
Justices Francis and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant TRO-X, L.P. recover its costs of this appeal from appellee

EAGLE OIL & GAS CO.

Judgment entered August 31, 2018.