**AFFIRMED and Opinion Filed March 9, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00197-CV**

**PASHA & SINA, INC. AND MOHSEN HEIDARI, Appellants**

**V.**

**SHIELDS LIMITED PARTNERSHIP, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-14272**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Carlyle

This is a parking dispute between two business entities that own adjoining real property. Following a bench trial, the trial court granted declaratory relief in favor of appellee Shields Limited Partnership (Shields LP) and awarded it attorney's fees. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

On June 27, 1986, two parties not in this lawsuit, Bernard E. Shields and Fickling/Patterson Properties, signed a "Parking Agreement" regarding two adjoining lots in a Dallas commercial and residential area. The Parking Agreement

stated (1) Bernard E. Shields was the owner of "Lot 11," also described as "Tract A," and (2) Fickling/Patterson Properties was the owner of the adjacent "Lot 10," also described as "Tract B." The Parking Agreement stated it was a covenant running with both tracts. The Parking Agreement's parties agreed to share eighteen specified parking spaces, eight of which straddled the property line between Tracts A and B and ten of which were located solely on Tract B. The agreement was recorded in Dallas County's deed records in 1987.

At the time the Parking Agreement was executed, Tract A contained a building with several commercial tenants, including St. Martin's Wine Bistro (the restaurant), which is still in operation. In 1997, appellant Mohsen Heidari purchased the restaurant and thus became a Tract A tenant. He purchased Tract B shortly after that. Several years later, Shields LP became the owner of Tract A. In 2013, appellant Pasha & Sina, Inc. (P&S), of which Mr. Heidari is president, acquired Tract B.

Shields LP filed this lawsuit in September 2020. The live petition alleged that "[d]ue to a disagreement between the parties" regarding "issues with the restaurant," P&S and Mr. Heidari sought to "improperly terminate" the Parking Agreement. Shields LP contended this "would cause Plaintiff severe harm" because it would then be unable "to satisfy the City's parking requirements" regarding Tract A. Shields LP sought a declaration that, among other things, "P&S may not currently effectuate the termination of the Parking Agreement."

Appellants filed a general denial answer and asserted affirmative defenses that included prior breach by Shields LP, lack of consideration, estoppel, equitable estoppel, and ratification.

The documents admitted into evidence at the bench trial included, among other things, the Parking Agreement and the restaurant's lease. During trial, appellants moved for judgment on the pleadings because the Parking Agreement "was not signed by all: 1) owners of the properties affected; and 2) lienholders, other than taxing entities, that have an interest in or an improvement on the properties." In support of that motion, appellants asked the trial court to take judicial notice of "the chain of title from the Dallas County deed records for [Tract B]." The trial court stated it would "carry that motion" and not "rule on it now." Later during trial, appellants sought judicial notice of certain Dallas Central Appraisal District records for "rebuttal" purposes. Shields LP objected to those records based on "lack of authentication" and the trial court sustained that objection. Appellants also argued at trial that the Parking Agreement "is no agreement at all" because at the time it was signed, the "person signing for the entity that was supposedly signing on behalf of Mr. Heidari's lot was not the owner of the property," which "if you went to the Deed Records you would see."

Thomas Shields testified Shields LP acquired Tract A from his father, who was the owner in 1986. According to Thomas Shields, (1) at the time the Parking Agreement was signed, Fickling/Patterson Properties owned the Tract A restaurant

now owned by Mr. Heidari and (2) to his knowledge, Fickling/Patterson Properties also owned Tract B at the time the Parking Agreement was executed and filed. He testified that during 2012 negotiations regarding the restaurant lease, Mr. Heidari stated he was "going to cancel the Parking Agreement" and Shields LP then agreed to a rent reduction "to keep the Parking Agreement in place" and "continue doing business as we had since the 1980's." In July 2020, appellants again sought to cancel the Parking Agreement after disagreements arose regarding the restaurant.

Mr. Heidari testified he purchased Tract B "to secure the parking situation for the restaurant." He stated that during the 2012 lease negotiations, there was "absolutely not" any "discussion that the lease price was based on a reduced rate" in return for parking. He also testified (1) a trash container belonging to Mr. Shields was recently placed on his property without his permission and currently blocks at least one parking spot; (2) "the whole back parking lot" was temporarily blocked without his permission during construction of a grease trap for another Tract A tenant; (3) a "block party" was held in the parking lot by another business owner; and (4) he has never been paid by Shields LP or any of its tenants for the use of his parking lot. On cross-examination Mr. Heidari testified that the spots described in the Parking Agreement that straddle the property line between the two tracts are used by all Tract A tenants including the restaurant.

The trial court signed a December 13, 2021 final judgment granting Shields LP's requested declaratory relief and awarding it attorney's fees of $175,092.30, plus

conditional appellate attorney's fees. The trial court also issued findings of fact and conclusions of law that stated, among other things:

## FINDINGS OF FACT

1. Shields Limited Partnership ("Shields") is the owner of property legally described as Lot 11. . . (the "Shields Property").

2. P&S is the current owner of property located adjacent to the Shields Property, which is legally described as Lot 10 . . . (the "P&S Property").

. . . .

6. On or about June 27, 1986, the then-owner of the Shields Property entered into a parking agreement with the then-owner of the P&S Property (the "Parking Agreement").

. . . .

12. The Parking Agreement was recorded in the Dallas County deed records on or about May 11, 1987. The Parking Agreement is a covenant running with the Shields Property and the P&S Property and binds Shields and P&S—the current owners of the Shields Property and the P&S Property, respectively.

13. From 1987 through the present date, various tenants located on the Shields Property and their customers have used the allocated off-street parking spaces described in the Parking Agreement. In fact, Heidari's business, St. Martins, has used and as of the date of the trial was using the parking spaces set forth in the Parking Agreement. P&S admitted that Heidari's business, St. Martins, needs the Parking Agreement to satisfy the City's off-street parking requirements.

. . . .

15. On October 20, 1987, the City issued a certificate of occupancy to St. Martins, which . . . specifically identified that it was using the Parking Agreement . . . . To date, no other certificate of occupancy has been issued by the City to St. Martins, and thus St. Martins still operates its business under this 1987 certificate of occupancy.

16. St. Martins currently uses a valet service operation for its restaurant located on the Shields Property. The application for St. Martins' valet operation identifies the location of the off-street parking used with its valet service as the same parking spaces provided in the Parking Agreement, which is the only signed agreement that provides St. Martins the legal right to park vehicles in the parking lot associated with the Parking Agreement. Accordingly, the Parking Agreement is

required for Heidari's restaurant, St. Martins, to satisfy the off-street parking requirements in the City's Code to operate its valet service.

17. Heidari received rent reductions from Shields due to the continued enforcement and use of the Parking Agreement.

18. Despite the long-term use of the parking spaces by the Shields' tenants, which includes Heidari, P&S sought to have the Parking Agreement terminated by the City following a dispute between the parties.

. . . .

25. P&S, and all predecessors-in-interest, acquiesced to and accepted the benefit of the Parking Agreement for decades prior to its attempts to terminate the same.

. . . .

## CONCLUSIONS OF LAW

. . . .

2. The Parking Agreement is a valid, enforceable contract.

. . . .

7. There is no evidence or support for P&S and Heidari's defensive matters and/or affirmative defenses.[1]

Appellants filed a January 12, 2022 motion for post-judgment relief in which they asserted "[t]he public records of Dallas County conclusively establish . . . that the party that signed [the Parking Agreement] on behalf of 'Tract B' . . . did not in fact own that property." The motion's attachments included uncertified copies of deeds from "Dallas County's public records" that appellants contended showed (1) in October 1982, Eastern States Preferred, Inc. conveyed Tract B to Philip A. Patterson and Frances Scott Fickling; (2) in January 1985, Mr. Patterson and Mr. Fickling conveyed Tract B to Cactus Properties, Inc.; and (3) in May 1988, Cactus

---

[1] Additionally, the trial court's findings of fact and conclusions of law stated, "Any finding of fact that is actually a conclusion of law, or of which any part thereof is a conclusion of law, shall be considered as such. Conversely, any conclusion of law that is actually a finding of fact, or which any part thereof is a finding of fact, shall be considered as such."

Properties, Inc. conveyed Tract B to Cobb-Fickling Properties Joint Venture. Appellants' motion "renew[ed] [appellants'] request that the Court take judicial notice of those records as to the ownership of Tract B" or, alternatively, "consider these items as newly discovered and/or rebuttal evidence obtained since trial." Appellants argued:

> At the time of trial, Defendant had requested judicial notice of the county records, offered a summary of records . . . , and learned from the testimony of Plaintiff's representative that he had not reviewed the county records about the ownership of Tract B. The documents are not duplicative of trial evidence and highly [sic] material on the issue of a valid agreement. Plaintiff should not be heard to object to the consideration of these documents after they deliberately created a misleading impression to this Court about Tract B's ownership.

On January 28, 2022, appellants filed a first amended motion for post-judgment relief asserting the same arguments and including the same attachments. After a hearing, the trial court denied appellants' first amended motion for post-judgment relief.

**Analysis**

Appellants assert four issues, which they describe as "no evidence" points: (1) Shields LP cannot enforce the Parking Agreement against appellants because the agreement is not a valid restrictive covenant "when no predecessor-in-interest to Defendants consented to that agreement," and it "is not even a valid contract between

the original parties, as it lacks mutuality of obligation"[2]; (2) if the Parking Agreement is unenforceable, Shields LP cannot "obtain the same result through principles of equity" because Shields LP did not plead or prove "either equitable doctrine (estoppel and quasi-estoppel) that it cited post-trial to support the judgment"; (3) "[e]ven if the Parking Agreement does bind P&S, P&S was released from its purported obligations because of Shields' prior material breach"; and (4) "if this Court reverses on the issue of liability, the case should be remanded for reconsideration of the issue of attorney's fees."

In an appeal from a bench trial, we review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's answer. *Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, L.L.C.*, 596 S.W.3d 370, 374 (Tex. App.—Dallas 2020, pet. denied); *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE § 37.010 (declaratory judgments are reviewed under same standards as other judgments).

When an appellant challenges the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial, the appellant must demonstrate there is no evidence to support the adverse finding. *Sheetz*, 503 S.W.3d at 502. When reviewing the record, we determine whether any evidence supports the challenged

---

[2] Though appellants also contend in their appellate brief that the Parking Agreement is illusory because it does not satisfy the Dallas Development Code, they abandoned that contention during oral submission before this Court.

finding. *Id*. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id*.; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

When the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate the evidence establishes conclusively all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When findings of fact are filed, the judgment "may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact." TEX. R. CIV. P. 299. But "when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." *Id*. When, as here, the appellate record includes the reporter's and clerk's records, implied findings of fact may be challenged for legal sufficiency. *Sheetz*, 503 S.W.3d at 502.

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Though we are not bound by the trial court's legal conclusions, the conclusions will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact support a correct legal theory. *Id*. Further, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id*.

### The Parking Agreement's validity and enforceability[3]

We begin with appellants' contention that the Parking Agreement "is not a valid restrictive covenant" and thus cannot bind P&S because "the entity that signed it did not own the relevant property." According to appellants, "[t]he Dallas County records conclusively establish that [Fickling/Patterson Properties] did not own Tract B at the relevant time" and thus "could not sign an agreement to burden that tract with a restrictive covenant." Appellants assert that though they "did not offer these deeds at trial," "[p]ost-trial, Appellants offered the relevant deeds for the trial court's consideration, asking that it take judicial notice of them, and alternatively to consider them as the full version of what had previously been offered in summary form," and "[t]he trial court overruled that motion." Appellants contend that though "this Court could reverse on this point on that ruling" because "a court has no discretion to

---

[3] We construe appellants' first issue as challenging the trial court's finding and conclusion that the Parking Agreement "is a covenant running with the Shields Property and the P&S Property and binds Shields and P&S" and "is a valid, enforceable contract."

–10–

misapply the law, and the deeds are, as a matter of law, the conclusive evidence of property ownership at the relevant times," this Court "need not engage those issues to reverse" because "the deeds are an appropriate (and indeed, mandatory) subject of judicial notice" by this Court and "compel reversal once they are considered."

In support of their request that this Court take judicial notice of the deeds in question, appellants cite Texas Rule of Evidence 201 and *Alsobrook v. MTGLQ Investors, LP*, 657 S.W.3d 327 (Tex. App.—Dallas 2021), *aff'd as modified*, 656 S.W.3d 394 (Tex. 2022). Rule 201 states that "at any stage of the proceeding," the court may judicially notice an adjudicative fact "that is not subject to reasonable dispute," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." TEX. R. EVID. 201. In *Alsobrook*, this Court concluded that the appeal of a summary judgment regarding a foreclosure proceeding had become moot because the property that was the subject of the underlying lawsuit was sold after summary judgment was rendered. 657 S.W.3d at 330. Though neither party in *Alsobrook* provided any tangible proof of the sale, this Court noted that appellate courts "take judicial notice of facts not in evidence before the trial court if the facts deprive the appellate court of jurisdiction." *Id*. at 329. This Court took judicial notice of Rockwall County Central Appraisal District records and concluded they provided sufficient proof that the property in question had been sold. *Id*. at 330.

Unlike in *Alsobrook*, the facts appellants seek to prove here are not jurisdictional. Appellants argued at trial that at the time the Parking Agreement was signed, the "person signing for the entity that was supposedly signing on behalf of Mr. Heidari's lot was not the owner of the property," which "if you went to the Deed Records you would see." Appellants now ask this Court to judicially notice deeds they were aware of but did not offer at trial to prove those allegations.

Though "[a]ppellate courts may take judicial notice of documents outside the appellate record to determine their jurisdiction or to resolve matters ancillary to decisions that are mandated by law, such as calculation of prejudgment interest," "[t]he Court of Appeals is not a trier of fact." *Thornton v. Columbia Med. Ctr. of Plano Subsidiary, L.P.*, No. 05-18-01010-CV, 2019 WL 4316481, at *3 & n.1 (Tex. App.—Dallas Sept. 12, 2019, pet. denied) (mem. op.) (quoting *SEI Bus. Sys., Inc. v. Bank One Tex., N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no pet.)). "Appellate courts are reluctant to take judicial notice of matters which go to the merits of a dispute" because "[t]o do so would transform this Court from one of appellate jurisdiction to one of original jurisdiction." *In re Kam*, No. 05-16-00126-CV, 2016 WL 7473905, at *6 (Tex. App.—Dallas Dec. 29, 2016, pet. denied) (mem. op.); *see also Young v. Trails End Homeowners Ass'n Inc.*, No. 03-14-00535-CV, 2016 WL 462705, at *4 n.6 (Tex. App.—Austin Feb. 2, 2016, no pet.) (mem. op.) (declining appellant's request for judicial notice of documents not admitted into evidence at trial that purported to establish disputed chain of title to real property

–12–

that went to case's merits). We cannot agree with appellants that judicial notice by this Court is mandated or appropriate here.

Moreover, we disagree with appellants' contention that the deeds in question "conclusively establish that [Fickling/Patterson Properties] did not own Tract B at the relevant time." As described above, the Parking Agreement was signed on June 27, 1986, and was recorded in 1987. The deeds in question purport to show (1) in October 1982, Eastern States Preferred, Inc. conveyed Tract B to Philip A. Patterson and Frances Scott Fickling; (2) in January 1985, Mr. Patterson and Mr. Fickling conveyed the tract to Cactus Properties, Inc.; and (3) in May 1988, Cactus Properties, Inc. conveyed the tract to Cobb-Fickling Properties Joint Venture. Nothing in the record shows those deeds constituted a complete chain of title and that there were no other transfers between the dates on those deeds. The evidence at trial included (1) the Parking Agreement, which is a recorded document stating Fickling/Patterson Properties was the owner of Tract B at the time the agreement was executed, and (2) Thomas Shields' testimony that to his knowledge, Fickling/Patterson Properties owned Tract B at the time the Parking Agreement was executed and filed. On this record, we conclude the evidence is legally sufficient to support the trial court's finding that the Parking Agreement "is a covenant running with the Shields Property and the P&S Property and binds Shields and P&S." *See King Ranch*, 118 S.W.3d at 751; *Sheetz*, 503 S.W.3d at 502.

–13–

Next, we address appellants' contention that even if the Parking Agreement could qualify as a restrictive covenant, it is not a valid contract because it "lacks mutuality of obligation." "A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.). "Without a mutuality of obligation, a contract is unenforceable." *Id.*

According to appellants, the Parking Agreement's terms "plainly only burden Tract B and benefit Tract A" and "[n]owhere in the Parking Agreement does Tract B receive any benefit." Thus, appellants assert, "[d]ue to lack of mutuality, the contract was not valid at its inception and cannot bind purported successors."

> Section III of the Parking Agreement states:
>
> Owner A and Owner B for the consideration of the City of Dallas granting a building permit and/or a certificate of occupancy for Tract A, agree that Tract B shall be used to provide 18 required off-street parking spaces for Tract A to comply with the Dallas Development Code of the City of Dallas.

The agreement's Section IV states that "[t]he location of the off-street parking spaces provided on Tract B for Tract A shall be shown on a site plan that is attached to and made a part of this parking agreement." The attached site plan shows that eight of the off-street parking spaces straddle the property line and include portions of both Tract A and Tract B:



Though appellants contend the Parking Agreement's express language supports their position, that language does not state that only Tract A is to benefit. Pursuant to the agreement's terms, both Owner A, which was Bernard E. Shields, and Owner B, which owned a restaurant on the Shields Property, burdened their respective properties with a parking-use restriction that provided for spaces that straddled the property line and benefited them both. *See TX.C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 567 (Tex. App.—Dallas 2007, pet denied) ("We determine the parties' intent from the instrument as a whole, considering each provision not in isolation but with reference to the entire contract."). Thus, we cannot agree with appellants that the Parking Agreement lacked mutuality of obligation.

### Prior material breach of the Parking Agreement

"[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (per

curiam). Prior material breach is an affirmative defense as to which the asserting party bears the burden of proof at trial. *2100 Ricchi, LLC v. Hilliard Office Sols. of Tex., Ltd.*, No. 05-21-00158-CV, 2022 WL 3053872, at *5 (Tex. App.—Dallas Aug. 3, 2022, pet. denied) (mem. op.).

Whether a breach is material is ordinarily a fact question. *Id.* at *6. Our supreme court recognizes five factors relevant to the materiality determination: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Id.* at *6 n.1 (citing *Mustang Pipeline Co.*, 134 S.W.3d at 199).

Appellants contend that even if the Parking Agreement is enforceable, "Shields' material breach released Defendants from performance of it." Appellants assert Shields LP materially breached the agreement by "using it for more than

parking" and "trying to impermissibly expand its use to Shields tenants not listed in the agreement," thus depriving appellants of the benefit they reasonably expected.[4]

The record shows parking spaces designated in the Parking Agreement were temporarily blocked when Shields LP authorized construction work, storage of construction materials, and, on one occasion, a block party benefiting other tenants with no compensation to appellants. Even assuming those uses were outside of the agreement, the evidence showed Mr. Heidari has continued using the parking lot, including for the restaurant's valet parking services. Thus, we cannot agree appellants conclusively showed they were deprived of the benefit they reasonably expected. As to Shields LP's alleged "trying" to expand the Parking Agreement to other tenants, the record does not show any such expansion has occurred, nor do appellants address any of the other materiality factors with regard to those attempts. On this record, we cannot conclude appellants met their burden to conclusively establish a prior material breach. *See Dow Chem. Co.*, 46 S.W.3d at 241.

In light of our conclusions above, we need not address appellants' remaining issues.

---

[4] Though appellants' argument on this issue does not assert a challenge to any particular findings or conclusions, the trial court stated in its conclusions of law that "[t]here is no evidence or support for P&S and Heidari's defensive matters and/or affirmative defenses," and thus necessarily found against appellants on their prior material breach affirmative defense. We construe appellants' argument as challenging that implied rejection.

We affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

220197F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PASHA & SINA, INC. AND
MOHSEN HEIDARI, Appellants

No. 05-22-00197-CV      V.

SHIELDS LIMITED
PARTNERSHIP, Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-14272.
Opinion delivered by Justice Carlyle.
Justices Goldstein and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SHIELDS LIMITED PARTNERSHIP recover its costs of this appeal and the amount of the trial court's judgment from appellants PASHA & SINA, INC. AND MOHSEN HEIDARI and from the cash deposit in lieu of bond. After the judgment and all costs have been paid, the clerk of the trial court is directed to release the balance, if any, of the cash deposit to the person who made the deposit.

Judgment entered March 9, 2023